(93 South. 86)

### COOKE v. STATE.   (7 Div. 739.)

(Court of Appeals of Alabama.  June 21, 1921. Rehearing Denied March 7, 1922.)

1. **Grand jury** ⬅️34—**Solicitor of another circuit may act with grand jury under parol authority of Attorney General.**

Under Acts 1915, p. 719, § 3, a solicitor of one judicial circuit may act with the grand jury of another circuit under the parol authority of the Attorney General.

2. **Homicide** ⬅️191—**Details of prior assault by prosecuting witness on third person held inadmissible.**

In a prosecution for assault with intent to murder, the details of a prior assault by prosecuting witness on a third person, who testified as to threats by the former to kill defendant, as well as the witness, unless they signed a certain paper, were inadmissible, even to show the character of the threat made.

3. **Homicide** ⬅️96(4)—**Previous threats no excuse for murderous assault on party making them.**

Previous threats; however violent, will not excuse a murderous assault on the party making them, as there must have been, in addition, some word or overt act clearly indicating a purpose to do the party assaulting some injury.

4. **Homicide** ⬅️96(4)—**"Overt act," justifying self-defense, defined.**

An "overt act," which will justify the exercise of the right of self-defense, is such as

would manifest to the mind of a reasonable person a present intention to kill him or do him great bodily harm.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Overt Act.]

**5. Homicide ⬦═190(4)— Proof of prior threats by prosecuting witness not admissible, unless evidence shows such act as would impress reasonable man with belief he was about to be assaulted.**

If the evidence, under its most reasonable construction in favor of defendant's contention of self-defense, in a prosecution for assault to murder, fails to show such an act by the assaulted party at the time of the assault as would impress a reasonable man with the belief that he was about to be assaulted in such manner as to result seriously, proof of prior threats is not admissible.

**6. Homicide ⬦═190(4)—Testimony as to threats by prosecuting witness properly excluded.**

In a prosecution for assault to murder, where the evidence showed that defendant armed himself with a shotgun and pistol, deliberately placed himself where prosecuting witness was liable to come, and in such position that he must apparently approach defendant, and, when he came, alighted from his car, looked at defendant intensely, put his right hand back in the car, but took it out with nothing in it, and, unarmed, took one or two steps toward defendant, the latter shot him, the court properly excluded testimony as to prior threats by him against defendant; there being no overt act justifying the shooting in self-defense.

**7. Criminal law ⬦═783(1)—Instruction on self-defense in prosecution for assault to murder held sufficient.**

In a prosecution for assault with intent to murder, charge that the reason prior threats by prosecuting witness against defendant were permitted to go to the jury was to illustrate the parties' conduct at the time of the shooting, and to enable it to determine who was the aggressor, *held* broad enough to embrace the parties' intensity of feelings, as explaining why defendant was armed, and whether he was in imminent peril when he fired.

**8. Criminal law ⬦═673(2)—Charge as to reason for submission of prior threats by prosecuting witness held unnecessary.**

In a prosecution for assault to murder, where there was no evidence of any overt act by the party assaulted justifying defendant in shooting in self-defense, no charge as to the reason for submission of evidence of prior threats by him against defendant was necessary.

**9. Homicide ⬦═190(3)—Prior threats excluded, where no evidence of hostile demonstration placing accused in apparent imminent danger.**

In a prosecution for assault to murder, testimony as to prior threats by prosecuting witness against defendant must be excluded, where there is no evidence, however slight, tending to prove a hostile demonstration, which can be reasonably interpreted as placing accused at the time of the assault in apparent imminent danger to life or other grievous bodily harm, and especially where there is no testimony tending to prove an overt act by the party assaulted.

**10. Witnesses ⬦═319—Impeachment may not be predicated on illegal and immaterial testimony.**

Impeachment may not be predicated on illegal and immaterial testimony.

**11. Homicide ⬦═244(1) — Evidence held insufficient to show that defendant could not have retreated without increasing peril.**

In a prosecution for assault with intent to murder, evidence *held* insufficient to show that defendant could not have retreated without apparently increasing his peril.

**12. Homicide ⬦═118(1)—One threatened with assault should flee, if he can without apparently increasing danger.**

The doctrine of retreat is not cowardly, but is based on the highest consideration of civilization, morals, and religion; it being better that one should flee than take human life, if he can do so without apparently increasing his danger.

**13. Homicide ⬦═338(1)—Admission of prosecuting witness' testimony as to lack of knowledge of defendant's whereabouts on morning of assault held not prejudicial.**

In a prosecution for assault to murder, admission of prosecuting witness' testimony that he did not know where defendant was on the morning of the shooting, if erroneous, was not prejudicial to defendant.

**14. Criminal law ⬦═390—Witnesses' testimony as to why they watched prosecuting witness on morning of difficulty properly excluded.**

In a prosecution for assault to murder, the court properly excluded witnesses' testimony as to why they watched prosecuting witness on the morning of the difficulty.

**15. Criminal law ⬦═829(12)—Refusal of charge to acquit, if innocence probable, held not prejudicial, in view of charges given.**

In a prosecution for assault with intent to murder, where the court charged that the jury must be convinced of defendant's guilt beyond a reasonable doubt before convicting, refusal to charge that it must find defendant not guilty, if there was a probability of his innocence, was not prejudicial.

**16. Criminal law ⬦═761(6)—Charge as to defendant's right to arm himself properly refused, as invading jury's province.**

In a prosecution for assault to murder, a charge that, if defendant was told, the evening or night before the shooting, that prosecuting witness had threatened to kill him, he had a right to arm himself, if such threat reasonably and honestly impressed him that he was in great danger of great bodily harm, was properly refused, as an invasion of the jury's province, as it was for the jury to say whether he should have armed himself or not.

---

⬦═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**17. Homicide ⬅➡300(4)—Charge on self-defense properly refused, as argumentative.**

In a prosecution for assault to murder, a charge that, if defendant was reasonably impressed, by threats communicated to him, that he was in danger of death or serious bodily harm at the hands of prosecuting witness, and saw the latter approaching him hastily with an intense or hostile expression on his face, after reaching his hand into his car, and one so situated would have been reasonably impressed that prosecuting witness was intending to execute such threats, defendant had a right to shoot, if reasonably necessary to the protection of his life or person, providing he was free from fault in bringing on the difficulty, and there was no apparent avenue of escape open without apparently increasing his peril, was properly refused, as argumentative.

**18. Criminal law ⬅➡829(1)—Charges substantially covered by charges given properly refused.**

Charges substantially covered by charges given were properly refused.

Appeal from Circuit Court, St. Clair County; O. A. Steele, Judge.

William P. Cooke was convicted of assault with intent to murder, and he appeals. Affirmed.

The following charges were refused to the defendant:

(3) "If the jury believe from the evidence that one W. L. Steed told the defendant, on the evening or night before the alleged shooting at about 8 o'clock the next morning, that Dr. Willbanks had told or directed him (said Steed) to tell defendant that, unless defendant came to Willbanks' house and signed a paper, Willbanks would kill defendant before the sun went down to-morrow night, then if such statement or threat, which was so communicated to defendant, reasonably and honestly impressed defendant that he was liable to be attacked by said Willbanks, and that he was in great danger of great bodily harm at the hands of said Willbanks, then the defendant had a right, and it was his duty, to arm himself with such arms or weapons as reasonably necessary to protect himself against such apprehended danger."

(4) "If the jury believe from the evidence in this case that recent threats to kill defendant on the day of the shooting, alleged to have been made by Dr. Willbanks, had been communicated to defendant, and that by reason of such threats defendant was reasonably impressed that his life or serious bodily harm was in peril at the hands of said Willbanks, then defendant had the right to be on his guard, and to act under less evidence of immediate danger than he would if such threats had not been communicated to him, provided he was free from fault in bringing on the immediate difficulty. And in this case, while such communicated threats were pending, that defendant saw said Willbanks approaching towards him hastily, keeping his eye on the defendant with an intense or hostile expression on his face, that defendant saw him get out of his car in an apparent hasty manner, reach his right hand into his car,

and start towards defendant hastily, his eyes all the time being fixed on defendant, then, if under all the circumstances the jury further believe a man situated as defendant was at said time would have been reasonably impressed that said Willbanks was then and there intending to execute said alleged threats, then the defendant had a right to shoot, and take the life of said Willbanks, provided such shooting was reasonably necessary to the protection of defendant's own life or person from great bodily harm, provided, further, that defendant was free from fault in bringing on the immediate difficulty, and that there was no apparent avenue or way of escape open to defendant without apparently increasing his peril."

Embry & Merchant, of Ashville, M. M. Smith, of Pell City, O. R. Hood, of Gadsden, and John. W. Altman and Jerone Edmundson, both of Birmingham, for appellant.

The court erred in not admitting the evidence of threats. 156 Ala. 101, 47 South. 133; 181 Ala. 28, 61 South. 259; 12 Ala. App. 46, 68 South. 504; 68 Ala. 164; 160 Ala. 44, 49 South. 828; 111 Ala. 29, 20 South. 612; 167 Ala. 42, 52 South. 602; 16 Ala. App. 501, 79 South. 199; 97 Miss. 304, 52 South. 630; 115 Miss. 678, 76 South. 625. The evidence disclosed an overt act on the part of Willbanks. 159 Ala. 53, 48 South. 690. The circumstances attending the threats were also admissible. 140 Ala. 50, 37 South. 93; 160 Ala. 43, 49 South. 828; 205 Ala. 684, 88 South. 906. Counsel discuss the evidence, but without citation of authority. The charges requested by the defendant should have been given. 71 Ala. 351; 145 Ala. 33, 40 South. 978; 140 Ala. 11, 37 South. 228; 100 Ala. 5, 14 South. 851, 46 Am. St. Rep. 17; 192 Ala. 1, 68 South. 334.

Harwell G. Davis, Atty. Gen., for the State.

No brief of counsel reached the Reporter.

SAMFORD, J. [1] Objection was made to the indictment, in various ways, because W. B. Bowling, solicitor of the Fifth judicial circuit, was before the grand jury assisting in the investigation of this case. This position was not tenable. It was agreed on the trial that W. B. Bowling, solicitor of the Fifth judicial circuit, acted with the grand jury under the parol authority of the Attorney General. Under act of the Legislature approved September 22, 1915 (Acts 1915, p. 719, § 3), this authority is fixed and provided, and it nowhere appears that the authority to act must be in writing.

[2] The most urgent insistence is made by appellant on account of various rulings of the court with respect to the admission of certain threats claimed to have been made by the party assaulted against the defendant and some other parties, not parties to this prosecution, shortly prior to the assault for which the defendant is here prosecuted, and

---

⬅➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the details of a difficulty between the assaulted party and the party to whom the threats are claimed to have been made, at the time of the making of the threats. There are many of these exceptions, running through the entire evidence; but the following will serve to illustrate the questions presented:

The court permitted proof to be made that the assaulted party, Dr. Willbanks, had, shortly prior to the shooting, made threats that, if defendant did not come and sign a certain paper before Sunday afternoon, he was going to kill defendant, and directed the party (one Steed) to whom he made the threats to go and tell defendant, and that Steed so told defendant. Thereupon defendant offered to prove by several witnesses the treatment accorded to Steed by Willbanks, as told him by Steed, to wit: Willbanks began to pull Steed by the hair, shaking him, and saying, "I brought you here to kill you." That Steed was then shoved up against the wall by Willbanks, choking him with his left hand, and with a large knife in his right hand, drew the knife and threatened to cut Steed's throat. That Willbanks then choked Steed down until he could not holloa, and then asked Steed if he was going to sign the paper, and then he gave Steed a whirl. That Willbanks threw Steed on the floor, and jumped on his breast with his knees, and with a large knife held in his right hand pressed it against Steed's throat, and demanded that Steed sign the paper or die. That, still holding Steed down on the floor in the same position, Willbanks said, "You have run around here with Dr. Cooke and his bunch, talking about me and my wife, and I'm going to serve all of them the same way that I am serving you. I am going to do what I brought you up here to do, to make you sign that paper or kill you." Steed jerked loose from him and started to the door, when Willbanks jumped and grabbed him again, saying at the time, "Give me the gun." Willbanks then stood with his hand in Steed's hair, shaking him by the hair. That after Mr. Vandegriff came in Steed started to tell Vandegriff what Willbanks had done to him, when the latter again caught hold of the hair of Steed, and snatched him around the room, and told him to shut up. The court declined to allow this proof, and the defendant excepted.

The details of a prior difficulty between the assaulted party and the defendant would not be admissible in evidence, and certainly the details of a difficulty between the assaulted party and a third person would not. Clarke v. State, 78 Ala. 474, 56 Am. Rep. 45. The defendant got the full benefit of all he was entitled to when he was allowed to show the threat made against him by Dr. Willbanks, and to have allowed the evidence offered would have multiplied the issues, by additional inquiry into facts and transactions

too remote from the crime charged. Dees v. State (Ala. App.) 89 South. 95;[1] Harkness v. State, 129 Ala. 71, 30 South. 73; Willingham v. State, 130 Ala. 35, 30 South. 429; Ezzell v. State, 13 Ala. App. 156, 68 South. 578; Richardson v. State, 191 Ala. 21, 68 South. 57. It is insisted, however, by defendant, that this testimony was admissible to show the character of the threat made. But, even so, it would have injected into the trial of the case issues involved in controversies between the assaulted party and three other parties, together with the merits of those issues, and, if permitted, the real issues might and doubtless would have been entirely lost sight of. The purpose of admitting proof of threats and former difficulties is to show malice or motive for doing the deed; if threats of the defendant, the commission of the crime charged; if threats of a party assaulted, the malice or motive accompanying the overt act proven. Lawrence v. State, 84 Ala. 424, 5 South. 33.

[3] But there is another question to be considered in connection with the admission of all this evidence regarding threats by the party assaulted. Previous threats, however violent, made by the assaulted party, will not of themselves excuse this defendant of the charge of murderous assault, but in addition thereto there must have been some word or overt act, on the part of Dr. Willbanks at the time, clearly indicating a purpose to do the defendant some injury. Roberts v. State, 68 Ala. 515. And that brings us to a consideration of what it takes to constitute an overt act, within the meaning of the law embracing homicide.

[4] No exact general definition of an overt act justifying a person in the exercise of the right of self-defense may be given which will meet the facts in every case; but in this jurisdiction it may be stated, as applicable to the case at bar, it means such act as would manifest to the mind of a reasonable person a present intention on the part of Dr. Willbanks to kill the defendant or to do him great bodily harm. Stoball v. State, 116 Ala. 454, 23 South. 162; 1 Mayfield Dig. 801, par. 17 et seq.; State v. Harrington, 12 Nev. 134.

[5] The doctrine of self-defense has been spoken of as the law of necessity, and so it is; but none the less it is as much the law as the statutes against murder, and should be so treated. In its application courts should not so construe its requirements as to work hardship on defendants, or to bring the doctrine into disrepute and ridicule by reasonable men. The law is the "essence of common sense," designed to protect the citizen in the possession of his life, liberty, and property, and if the evidence, under its most reasonable construction in favor of the defendant's contention, fails to show, on the

---

[1] Ante, p. 133.

part of the assaulted party at the time of the shooting, such act as would impress a reasonable man with the belief that the defendant was about to be assaulted in such manner as to result seriously, proof of prior threats would not be admissible.

[6] The evidence in this case shows without conflict that the defendant was at the post office in the hamlet where he and Dr. Willbanks lived, on a Sunday morning about mail time, in his automobile, in which he had a loaded double-barrel gun and a 30–30 Colt's pistol; that he had stopped his car nearly in front of the post office door and near the curb, and was standing between the curb and his car, where any person going from the street to the post office would have to go in the general direction of the defendant; that Dr. Willbanks coming from his own home driving in a Dodge car, with a left-hand drive, drove up, stopped his car within 21 feet of defendant's car, opened the door of the car with his left hand, got out on the left side, shut the door with his right hand, and took a step or two towards the front of his car, which was in the direction of the post office door, and necessarily in the direction of defendant, when defendant, without a word, fired one barrel of the shotgun at Dr. Willbanks, missing him and as quick as thought fired the second time. Immediately Dr. Willbanks, being in his shirt sleeves, threw up both hands and cried, "I'm unarmed," or "I haven't got anything," and turned, the shot taking effect in the back, and then defendant got his pistol and tried further to shoot Dr. Willbanks, who is shown without dispute to have been unarmed, either on his person or in his car. The most favorable statement to the defendant is by the defendant himself, who says:

"He (Willbanks) opened his door with his left hand and got right out, abrupt like, looking at me with an intense expression, * * * an expression of hostility, and was looking at me with that expression. He got out, opened the door, with his right hand inside the door like that. He made one step toward me, and at that time I was standing even with the back door of my car, and the gun was there covered up with my duster, and I pulled the tail end of my duster over and caught the butt end of that gun. Dr. Willbanks had started towards me, and I shot a little quick and missed him; had no time to get aim. I then shot the second time, and he was still coming. The first shot did not strike him, and as I fired the second shot he threw his arms up this way, and says, 'I'm not armed,' still coming. The first shot he saw the gun and whirled, and when the second shot happened he was this way (indicating)."

Even if what the defendant testified to is true, and Dr. Willbanks did put his hand in his car after he had gotten out, Dr. Willbanks was in his shirt sleeves, unarmed, and with nothing in his hands as he approached

in the direction of defendant, and defendant, having his eyes on him, was bound to have seen that Dr. Willbanks was not in position to do him great bodily harm; it not even being claimed that Dr. Willbanks made the usual motion of "throwing his hand behind him." To hold that the facts in this case present an overt act would be to bring the doctrine of self-defense into disrepute and ridicule by all reasonable men.

Again, the case sought to be made by the defendant, by the introduction of this testimony, would be: The defendant, knowing of the threat which Dr. Willbanks had made against him, that Willbanks was greatly enraged against the defendant and others, because defendant and others had been talking about Willbanks' wife, armed himself with a shotgun and a pistol, and on Sunday morning, in the small village where both parties lived, and at a time when the Sunday mail was coming in, deliberately placed himself at a place where Dr. Willbanks was liable to come, and in such position that, if Dr. Willbanks did come to get his Sunday mail, he could not enter the post office without apparently approaching defendant, and when Willbanks did come, stop his car, look at defendant in an intense manner, put his right hand back in the car, take it out with nothing in it, take one or two steps towards the front of his car, and towards the post office and defendant, Willbanks being unarmed, the defendant shot him down. To admit testimony of threats under this state of facts would be contrary to every known rule of evidence. The court, therefore, was not in error in excluding testimony of threats, where same was excluded, and would not have been in error if all threats on the part of Dr. Willbanks had been excluded.

[7-9] That part of the oral charge to which exception was taken, to wit:

"The only reason those threats were permitted to go to you was to illustrate the conduct that Sunday morning of Dr. Cooke and Dr. Willbanks, for the purpose of illustrating the conduct of each, and to enable you to determine who the aggressor was in that difficulty; that is, who started that row"

—was broad enough in its terms to embrace the intensity of feelings of the parties, explaining why defendant was armed at the time, and whether or not the defendant was, at the time he fired the shot, in imminent peril of life or limb. Besides, under our view of this case, no charge on that point was necessary. Taylor v. State, 48 Ala. 180. In Roberts v. State, 68 Ala. 156, and Turner v. State, 160 Ala. 44, 49 South. 828, relied upon by appellant's counsel, it is said:

"They [threats] cannot be excluded, if there is the slightest evidence tending to prove a hostile demonstration, *which can be reasonably interpreted* [italics ours] as placing the accused,

at the time of the killing, in apparent imminent danger to life or of other grievous bodily harm."

In this case it would only be by the most unreasonable speculation that it could be said that the defendant at the time he fired was in imminent peril. The foregoing is applicable to the exception taken to the action of the court in refusing to allow proof of threats by Dr. Willbanks. Besides at the time offered, there was no sort of testimony that could be said to prove, or even tend to prove, an overt act.

[10] Neither were the answers of Dr. Willbanks regarding threats legal for impeachment of his testimony. The answers were immaterial, and impeachment may not be predicated upon illegal and immaterial testimony.

[11, 12] There was no evidence in this case from which the jury could have reasonably drawn the conclusion that the defendant could not have retreated without apparently increasing his peril. The defendant stood there armed with a double-barrel shotgun, the assaulted party unarmed, nothing to prevent defendant from retiring, keeping Dr. Willbanks covered the while, if he had so minded, or he might have fled, without danger. There is no evidence in this record sufficient to sustain a plea of self-defense on that point. This doctrine of retreat is sometimes referred to as being cowardly, but not so; it is based upon the highest consideration of civilization, morals and our holy religion. It is better that one man should flee rather than take human life, and at a time like the present, when human life is taken upon the least provocation, and observance of law is held so lightly, and the very fabric of our laws seem to be trembling in the balance, it is well that we should restate and emphasize the rule, that it is better and right that a man should flee rather than that he take human life, if he can do so without apparently increasing his danger to life or limb. It is no cowardly doctrine. It is the law of his sovereign state, which he is bound to obey; it is the law of God, which he ignores at his peril. It is the reasonable law of God and man.

That portion of the court's oral charge defining self-defense was without error. Every element of self-defense was plainly and correctly given, and while the excerpt set out does not set forth the whole of the rule when taken in connection with the rest of the charge, there is no error.

[13] If it was error to have permitted Dr. Willbanks to testify that he did not know where Dr. Cooke was that morning, it was without possible injury to the defendant.

[14] It was proper and without error that the court refused to permit the witness Ash to give his reason why he watched Dr. Willbanks the morning of the difficulty. The same is true as to the testimony of the witness Sturdyvant.

[15] Charge No. 8, as follows:

"The court charges the jury that if, from all the evidence in this case, there is a probability of the defendant's innocence, the jury must find the defendant not guilty"

—was requested by defendant, and was refused by the court. This charge has been held to be good in Bones v. State, 117 Ala. 138, 23 South. 138; Whitaker v. State, 106 Ala. 30, 17 South. 456; Croft v. State, 95 Ala. 3, 10 South. 517, and in some other cases. But the court had already, both in its oral charge and by written charge requested by defendant, charged the jury that before the defendant could be convicted the jury must be convinced of his guilt beyond a reasonable doubt. Where this is the case, the Supreme Court, speaking through Sommerville, J., said:

"There was no prejudicial error in refusing to give charges 4 and 8, to the jury, as requested by defendant. It is difficult to understand why a defendant would wish to have the jury instructed that, 'if there is a probability of defendant's innocence, you must find the defendant not guilty,' when he is entitled to an instruction that he must be acquitted, unless shown to be guilty beyond a reasonable doubt; a requirement far more rigorous against the state, and far more favorable to the defendant." Edwards v. State, 205 Ala. 160, 87 South. 179; Bain v. State, 74 Ala. 38.

[16-18] Charge No. 3, requested in writing by defendant, was an invasion of the province of the jury. Even if the threat had been made, it was for the jury to say whether he should have armed himself or not.

Charge 4 was an argument.

Charges 10 and 11 were substantially covered by charge 9, and by the general charge of the court.

We find no reversible error in the record, and the judgment is affirmed.

Affirmed.