(108 So. 348)

**MONTGOMERY v. STATE.    (8 Div. 442.)**

(Court of Appeals of Alabama.  Feb. 16, 1926.
Rehearing Denied April 6, 1926.)

1. **Homicide** ⬥⟾282—**Whether defendant, firing pistol and killing deceased, with whom he had no trouble, was guilty of manslaughter in first or second degree, held for jury.**

Whether defendant, firing pistol and killing a mere lad, with whom he had no trouble or grievance, or any members of his family, was guilty of manslaughter in first or second degree, held for jury.

2. **Witnesses** ⬥⟾379(2)—**Mother of deceased, testifying to his dying statement, could not be impeached by statements as to her opinion whether shooting was intentional, and as to compromising case against defendant.**

Mother of deceased, testifying without objection as to contents of his dying statement, could not be impeached by showing statements as to her opinion whether shooting was intentional, and as to compromising case against defendant.

3. **Criminal law** ⬥⟾450—**Statements of mother of deceased, testifying as to his dying statements as to her opinion whether shooting was intentional, and as to compromising case against defendant, held inadmissible.**

Statements of mother of deceased, testifying to contents of his dying statement as to her opinion as to whether shooting was intentional and, as to compromising case against defendant, held inadmissible.

4. **Witnesses** ⬥⟾405(1).

Witness may not be impeached on an immaterial matter.

5. **Criminal law** ⬥⟾829(1).

Refusal of requested charge covered by court's oral charge is not error.

6. **Criminal law** ⬥⟾863(1).

Court's action in giving jury further instructions, after they had been for a time engaged in deliberations, held not erroneous.

Appeal from Circuit Court, Lawrence County; J. E. Horton, Judge.

Dave Montgomery was convicted of first degree manslaughter, and he appeals. Affirmed.

Certiorari denied by Supreme Court in Montgomery v. State, 214 Ala. 476, 108 So. 349.

W. W. Callahan, of Decatur, and R. L. Almon, of Moulton, for appellant.

For definition of homicide, see Harrington v. State, 83 Ala. 9, 3 So. 425; Williams v. State, 83 Ala. 16, 3 So. 616; 13 R. C. L. 89 (1, Homicide). Defendant should have been permitted to show that the mother of deceased made statements out of court inconsistent with her testimony. Ham v. State, ante, p. 103, 105 So. 390; Cashman v. State, 20 Ala. App. 599, 104 So. 555; Cochran v. State, 20 Ala. App. 109, 101 So. 73; Hanye v. State, 211 Ala. 555, 101 So. 108; 7 Ency. Evi. 149; 2 Wigmore, Evi. §§ 1040, 1041. The verdict was contrary to the weight of the evidence, and the motion for a new trial should have been granted.

Harwell G. Davis, Atty. Gen., and Thos. E. Knight, Jr., Asst. Atty. Gen., for the State.

The court properly refused to allow defendant to contradict or attempt to contra-

---

⬥⟾For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

dict state's witness about an immaterial matter. Cooke v. State, 18 Ala. App. 416, 93 So. 86; Kirkpatrick v. State, 18 Ala. App. 389, 92 So. 238; Lakey v. State, 18 Ala. App. 442, 93 So. 51; Loveless v. Hardy, 201 Ala. 605, 79 So. 37. There was no error in refusing instructions covered by the oral charge. Burk v. State, 16 Ala. App. 110, 75 So. 702.

RICE, J. Appellant was convicted of the offense of manslaughter in the first degree, and his punishment fixed at four years in the penitentiary.

The deceased, Leonard Dotson, a 12 year old boy, was shot with a pistol and killed while riding along a public highway about 11 o'clock at night.

The state's case, based largely upon the testimony of its chief witness, Russell Dotson, the 14 year old brother of deceased, corroborated in some respects by a "dying statement" of the deceased as testified to by his mother, was to the effect:

That deceased and the said Russell Dotson, who were riding mules, overtook defendant, who was riding in a one-seated buggy with three companions, and (quoting from appellant's brief filed on this appeal) "when they (deceased and his brother, the witness) had gotten within about four steps of the parties in the buggy, defendant looked at them and fired the shots, and his brother (deceased) fell to the ground, and defendant and his companions drove off "pretty fast." And that at this time "the moon was shining and was pretty high up."

The testimony offered on behalf of the defendant was to the effect:

That "the defendant, while traveling in a one-seated buggy in company with his brother and two other young men along an infrequently traveled public road in Lawrence county, about 11 o'clock p. m. on September 6, 1924, fired two shots from a pistol aimed at nothing, and intending to hit nothing, one of which shots killed the deceased, a young boy 11 or 12 years old, who, in company with his brother, was traveling along this road, approaching the defendant's vehicle from the rear."

There was some other testimony in the case having to do with a difficulty between defendant's brother and one Fillyaw, at a church and along the road from where all the parties and witnesses, as to the facts of the killing, had attended services that night; but, as we view the questions presented on this appeal, all such testimony has no bearing, and may be disregarded.

Without discussing, or here pointing out the distinction between, the two degrees of homicide denominated under the law in this state as manslaughter in the first degree and manslaughter in the second degree, we observe that it is apparent from the above brief reference to the evidence in the case that the chief, in fact, the only, question litigated on this trial, was as to whether the defendant was guilty of first degree manslaughter or second degree manslaughter.

Appellant's counsel in a very able brief filed on this appeal ridicule very forcibly the state's testimony tending to make out a case of intentional killing, which distinguishes the offense for which appellant was convicted from that of manslaughter in the second degree—the offense of which, it is contended by the learned counsel, the evidence overwhelmingly shows defendant to be guilty.

[1] We are sensible of the force of the argument made by the counsel, but it is one that belongs and was no doubt ably delivered to the jury trying the case. We are unable to say that the verdict returned did not find support in the evidence offered on the trial. It may, and does, appear strange that defendant, who is shown to have had no trouble with or grievance toward deceased, a mere lad, or any members of his family, should deliberately kill the deceased, yet so substantial evidence tends to show he did; and, if the jury believed it, we have no warrant in law to overturn their finding. Certainly, we think, would we be unjustified in reversing the action of the trial court in overruling appellant's motion for a new trial. While we have no right to speculate as to what may have been in the minds of the jury trying the case, we feel disposed to observe out of respect for the very able argument of counsel for appellant that the verdict was against the overwhelming preponderance of the evidence that perhaps the positive testimony of young Russell Dotson that defendant "fired the shots when we were about four steps from him," and that "the moon was shining," and that "he was looking at us," did not seem as unreasonable as it might have otherwise, because of the fact that defendant and "four other boys drank a (the) pint of whisky that evening on the way to church."

[2-4] The witness Mrs. Dotson, the mother of deceased, testified, without objection, to the contents of a "dying statement" made by her son. It was clearly incompetent to impeach her, or undertake to impeach her, by showing statements made by her as to her opinion as to whether or not the shooting was intentional, and by showing statements made by her as to compromising the case against the defendant. All the rulings complained of in this connection were free from error. The matters sought to be shown were not admissible for any purpose, to say nothing of the well-established rule that a witness may not be impeached on an immaterial matter. Cooke v. State, 18 Ala. App. 416, 93 So. 86.

[5] The principles of law sought to be stated in appellant's refused charges 3, 11, and 14, in so far as the same were correct and applicable, were, we think, conveyed to the jury in other written charges given at appellant's request, in connection with the splendid oral charge of the trial court.

[6] We do not think the action of the court in giving the jury the further instructions complained of, after the said jury had been for a time engaged in its deliberations, subject to the criticism made. Whittle v. State, 205 Ala. 639, 89 So. 43.

We have carefully examined each exception reserved on the trial, each written instruction refused to defendant, as well as the record in the case, and, finding nowhere any prejudicial error, the judgment of conviction is affirmed.

Affirmed.