423 So.2d 280 (1982)
Joe Luther LAFFITY
v.
STATE.
8 Div. 660.
Court of Criminal Appeals of Alabama.
July 27, 1982.
Rehearing Denied August 24, 1982.
Certiorari Denied December 3, 1982.
*281 Rodney B. Slusher of Peck & Slusher, Florence, for appellant.
Charles A. Graddick, Atty. Gen., and Jennifer M. Mullins, Asst. Atty. Gen., for appellee.
Alabama Supreme Court 81-1032.
BARRON, Judge.
Joe Luther Laffity was charged, tried, and convicted of the September 11, 1981, murder of Blannie Harden. The State, through written notice, invoked the provisions of the Habitual Felony Offenders Act. A sentencing hearing was held, after which appellant was sentenced to life imprisonment without parole. Hence this appeal.
Appellant does not challenge the sufficiency of the State's evidence.
On the evening of September 10, 1981, appellant drove to Huntsville to borrow some money from his girlfriend, Cora Coleman, who was employed at a local country club. After borrowing the money appellant left but returned a few hours later. Coleman followed appellant to his apartment in Florence and remained there for the evening while appellant went out. He did not return until around 4:00 a.m. the next morning. Throughout this time appellant was drinking and appeared intoxicated.
Around 8:00 a.m. on September 11, 1981, Ms. Coleman awakened appellant and told *282 him that she was going to see her parents in Killen but would return later. She placed her belongings in her car and left. Around 10:00 a.m. she arrived at her parents' home. About fifteen minutes later she heard appellant and her father, the victim, arguing. Shortly thereafter appellant left.
About five minutes later, appellant called Ms. Coleman and asked her to come to a nearby convenience store. She refused and appellant told her that he was going to get a gun and come get her. After telling appellant to get the gun, Ms. Coleman hung up.
Less than thirty minutes later, appellant returned to the victim's residence with a shotgun. The victim came from his bedroom to the front door carrying a shotgun in a breeched position. As the victim opened the screen door, appellant fired his shotgun, striking and killing the victim. Appellant fled the scene and was later arrested.
The evidence clearly establishes a prima facie case of murder. Ala.Code § 13A-6-2(a)(2) (Amended 1977).

I
Appellant contends that the trial court erred in refusing to admit into evidence specific incidents of the victim's violent nature. Appellant made an offer of proof wherein he noted that during 1978 and 1979 Ms. Coleman wrote him three times concerning threats made by the victim on her life and her children's lives. Appellant requested that he be allowed to cross-examine Ms. Coleman relative to the threats.
Appellant asserts that such would have been relevant to show his apprehension of peril and to the issue of self-defense, which he attempted to establish at trial. Evidence adduced at trial indicated that appellant and the victim had not been on good relations for some time prior to the killing. However, at the time he initially made his offer of proof, no evidence of self-defense had been presented by appellant. He subsequently renewed his proffer prior to resting his case in chief.
The general rules governing the admission of character evidence of the victim are summarized in Bankston v. State, 358 So.2d 1040, 1041-42 (Ala.1978):
"Ordinarily, the character or reputation of the deceased in a murder trial is not involved as an issue, and proof relative thereto is generally inadmissible.... Such a rule of law is weighed in the consideration that the law does not distinguish between the killing of an evil person and that of a saintly person.... However, evidence of the character or reputation of the deceased for turbulence, violence and bloodthirstiness should be received when it illustrates or explains words or acts of the deceased at the time of the killing or to show that the killing was in self defense.... The rationale of the rule allowing such evidence is that words spoken or actions taken by a person with a reputation for turbulence, violence, and bloodthirstiness may convey a meaning and intent different from the same words and actions of someone else. Seemingly innocent actions of the deceased may take on a different significance when considered in the light of his or her character."
"It is well understood that evidence of the deceased's turbulent, violent, and blood-thirsty character is not competent absent some evidence tending to show that the killing was in self defense; that is, some overt act or hostile demonstration on the part of the deceased.... Such evidence is not available to the defendant if he or she is the aggressor.... However, on all doubtful questions of who is the aggressor, the bad character of the deceased for turbulence and violence should be admitted.... When the evidence of self defense is sufficient to go to the jury, evidence of the deceased's bad character for turbulence and violence must be accepted." (Citations omitted).
Evidence of the victim's bad general reputation for peace and quiet, violence, or like trait is admissible only if the evidence before the trial court at the time such an *283 offer is made tends to establish that the accused acted in self-defense. Thompson v. State, 405 So.2d 717 (Ala.Cr.App.), cert. denied, 405 So.2d 721 (Ala.1981); Huffman v. State, 360 So.2d 1038 (Ala.Cr.App.1977), aff'd, 360 So.2d 1045 (Ala.1978).
However, in Gamble, McElroy's Alabama Evidence § 63.01(3) (3rd ed. 1977), we find the following:
"In some cases where the accused is relying on self-defense, he will want to show that the victim had previously committed specific acts of violence towards other persons and that the accused knew of such acts. The purpose of such evidence will be to show the accused's reasonable apprehension of peril. The general rule is that such evidence is admissible if the person toward whom the violence was directed had a very close connection with the accused such that there would be a reasonable apprehension of peril on the part of the accused. It is quite clear that such violence towards other persons is not admissible if it is remote in time or lacks any connection in circumstance with the accused. It would appear, though not ever expressly stated in the cases, that the following are the factors which will be considered by the trial court in exercising its discretion over whether to admit such acts of violence:
"(a) The distance, small or great, between the time and place of the reported former act of violence and the presently charged homicide or assault.
"(b) The presence or absence of a tie of kinship or friendship between the reported victim of deceased's former act of violence and the accused. Such factor logically indicating whether the accused could reasonably feel that the deceased's reported hostility would exist against him also.
"(c) The relationship between the accused and the deceased after accused was informed of the former act of violence. If the accused continues to live with or associate with the deceased, then such is a factor against admitting the evidence of violence towards other persons.
"(d) The similarity or dissimilarity of the immediate facts of the presently charged homicide to the facts of the reported former act of violence. The more similar they are the more likely the court is to admit the former act of violence." (Footnotes omitted).
A complete review of appellant's offer of proof in light of the above general rules leaves no doubt that the trial court properly excluded it. Thus, we find no error in its ruling. Weaver v. State, 402 So.2d 1099 (Ala.Cr.App.1981).

II
After the trial court's oral charge, to which there was no exception, the jury began its deliberations. After about forty-five minutes, the jury returned to the courtroom after making the written request, "We need a brief definition of murder, manslaughter, & criminally negligent homicide to study. As to the charge you read from the bench."
Appellant objected, stating that such would confuse and mislead the jury as well as place undue emphasis on a portion of the court's oral charge. No ruling on the objection was made. Subsequently, the trial court further instructed the jury consistent with its request and the language of its oral charge by reading the applicable statutes. In addition, the trial court instructed the jury that the giving of the supplemental charge "should not be taken ... as any inference that I believe this defendant is guilty" and instructed the jury not to place any undue emphasis on it and to weigh it equally with its previous charge.
A nearly identical situation arose in Carter v. State, 356 So.2d 682 (Ala.Cr.App.), cert. denied, 356 So.2d 689 (Ala.1978). In answering the issue adverse to the defendant's contention, this court, at page 688, stated:
"The same question was presented in Tillison v. State, 32 Ala.App. 397, 27 So.2d 41, cert. denied, 248 Ala. 196, 27 So.2d 46 (1946). The Court of Appeals answered the question presented by stating:

*284 "`After the jury had deliberated for a while it returned to the court room for further instruction. The trial judge restated to the jury a portion of his oral charge. Exceptions were taken by appellant. Complaint is made that the trial judge restated a part of his oral charge and in this manner gave added and undue emphasis to said portion.
"`We fail to see how this action on the part of the lower court could in any way interfere with the legal rights of the defendant. We take it that the jury came to a place in its deliberation where it wanted further light and it sought this light from the only source open to it. The law wisely gives this opportunity to a jury which at all times has access to the trial court for legal instruction. Montgomery v. State, 21 Ala.App. 327, 108 So. 348; Roberts v. State, 26 Ala.App. 331, 159 So. 373.'"
We find the above quoted language applicable to and dispositive of the instant issue. Consequently, we find no error in the trial court's action.

III
Appellant contends that the trial court erred in refusing to give his written requested charges 7, 8, and 10 dealing with the defense of self-defense. Appellant failed to object or except to their refusal. Thus, nothing is preserved for our review. Jones v. State, 412 So.2d 1270 (Ala.Cr.App. 1982); Jones v. State, 412 So.2d 1247 (Ala. Cr.App.1982); McCowan v. State, 412 So.2d 847 (Ala.Cr.App.1982); Allen v. State, 414 So.2d 989 (Ala.Cr.App.1981), aff'd, 414 So.2d 993 (Ala.1982).

IV
During his direct examination, appellant admitted having been convicted of four prior felonies. At his sentencing hearing, the State introduced, without objection, certified copies of the minute entries of three of the prior convictions. See Smith v. State, 409 So.2d 455 (Ala.Cr.App.1981); Douglas v. State, 406 So.2d 1051 (Ala.Cr. App.), cert. denied, 406 So.2d 1053 (Ala. 1981); Ray v. State, 398 So.2d 774 (Ala.Cr. App.), cert. denied, 398 So.2d 777 (Ala.1981); Thatch v. State, 397 So.2d 246 (Ala.Cr. App.), cert. denied, 397 So.2d 253 (Ala.1981).
Appellant's assertion on appeal that his sentence of life imprisonment without parole constitutes cruel and unusual punishment has previously been answered to his detriment in Lidge v. State, [Ms. 6 Div. 580, Apr. 20, 1982], 419 So.2d 610 (Ala.Cr.App. 1982), and Holley v. State, 397 So.2d 211 (Ala.Cr.App.), cert. denied, 397 So.2d 217 (Ala.1981). See also Dozier v. State, 415 So.2d 3 (Ala.Cr.App.1982); Watson v. State, 392 So.2d 1274 (Ala.Cr.App.1980), cert. denied, 392 So.2d 1280 (Ala.1981).
We have examined the issues presented by appellant on appeal and have found no error. This cause is hereby affirmed.
AFFIRMED.
All the Judges concur.