Appellant, Ronnie James Baker, was convicted of murder and sentenced to life imprisonment without parole, in accordance with the Alabama Habitual Offender Statute. He raises five issues on appeal.
 I
Appellant Baker's first contention on appeal is that the trial court erred by denying his motion to dismiss the indictment. Appellant argues that the district attorney, in his opening statement to the jury, read Count II (Count I having been nol-prossed), which read: "in violation of § 13-6-2 of the Code of Alabama." Further, he argues that this section has been repealed and that he cannot properly be charged under a repealed chapter or section of the code and, therefore, that he is entitled to have his indictment dismissed.
Count II of the indictment reads as follows:
 "Ronnie James Baker did recklessly engage in conduct which manifested extreme indifference to human life and created a grave risk of death to a person other than the said Ronnie James Baker, and did thereby cause the death of Josephine Smith, by shooting her with a rifle, in violation of § 13-6-2 of the Code of Alabama. . . ." (Emphasis added)
The proper code section should have been § 13A-6-2. We can only assume from examining the trial record that this was a typographical error.
Rule 15.2 (b), Alabama Temporary Rules of Criminal Procedure, states as follows: *Page 702 
 "The indictment on information shall state for each separate offense, other than lesser included offenses, the official or customary citation of the statute, rule, regulation, or other provision of law which the defendant is alleged to have violated."
Alabama courts have held that "[n]either clerical nor grammatical errors vitiate an indictment unless they change the words or obscure the meaning." Cook v. State, 369 So.2d 1243
(Ala.Cr.App. 1977), aff'd in part, rev'd in part,369 So.2d 1251 (Ala. 1978). Further, a "miscitation of a code section does not void an indictment which otherwise states an offense; and in absence of a showing of actual prejudice to the defendant, reference to the erroneous code section will be treated as mere surplusage." Ex parte Bush, 431 So.2d 563 (Ala. 1983), cert. denied, Bush v. Alabama, ___ U.S. ___,104 S.Ct. 200, 78 L.Ed.2d 175 (1983). Although the code section was miscited, the description of the offense that appellant was charged with was given in the indictment. Therefore, this error had no tendency to mislead the defendant or leave him in doubt as to what offense he was charged with. Sanders v. State,278 Ala. 453, 179 So.2d 35 (1965). Bowens v. State, 54 Ala. App. 491, 309 So.2d 844 (1974), cert. denied, 293 Ala. 746,309 So.2d 850 (1975), sets forth the requirements for a constitutionally sufficient indictment as follows:
 "(1) To show the defendant what he should prepare to defend against; (2) to identify the charged offense so that he may be tried for the same charge which was laid before the grand jury; (3) that the judgment (to some degree) may afford some protection against double jeopardy; and (4) to give the court, after conviction, means to accept (or reject) the verdict, pronounce judgment and pass sentence."
We conclude that this indictment does satisfy the constitutional standards. The clerical error in the indictment was not fatal, since the defective indictment met constitutional standards, and the error did not prejudice the substantial rights of the defendant. Perry v. State,439 So.2d 823 (Ala.Cr.App. 1983).
 II
Appellant next contends that he lacked the mental capacity to understand the effect of the inculpatory statement he made after waiving his rights.
The Eufaula police picked up Ronnie James Baker, the appellant, and took him to the police department for questioning. Baker had been drinking heavily, and was possibly drunk at the time he was questioned by Benny J. Gatlin, an A.B.I. investigator. Baker made an oral statement, which was taken down by Sergeant A.G. Tew.
Gatlin testified that he advised the appellant of all of hisMiranda rights, using a waiver-of-counsel form, which he read to appellant. He stated that the appellant understood the waiver of rights form and signed it. Gatlin further stated that he read the entire form to Baker before Baker signed it. Additionally, he stated that neither he nor Sergeant Tew made any threats or promises, or did anything to coerce the appellant into making the statement.
Baker said, in part:
 "I walked to Leroy Jackson's house. I got Leroy's rifle and left with it. I walked back to Monkey Jim's. I was in the alley across the street from Monkey Jim's. I saw Josephine, Marlene, and Billy Charles standing in the alley across the street from me. I took the rifle and fired over toward them to scare them. After I fired I realized I had hit Josephine. I throwed the gun down and went over and tried to help."
This statement was read to the jury.
In support of his contention that he lacked the requisite mental capacity, appellant called one of his former school teachers, Helen Folsom, as a witness. She testified that the appellant had entered her school in 1971 with a mental age of 8.1. Later that same year he was given an I.Q. test which indicated he had an I.Q. of 61 and a mental age of eight years, nine months. When appellant left the school *Page 703 
two years later he had a chronological age of 16 years, 6 months, and a mental age of 10 years, 1 month. This last observation was made more than 10 years prior to the shooting in question. The appellant was 27 years old at the time of the shooting.
Although evidence was introduced that appellant had an inferior reading ability, had an I.Q. of 61, and was blind in one eye, Alabama courts have held that weak intellect or illiteracy, alone, will not render a confession involuntary.Hobbs v. State, 401 So.2d 276 (Ala.Cr.App. 1981); Womack v.State, 435 So.2d 754 (Ala.Cr.App.), aff'd, Ex parte Womack,435 So.2d 766 (Ala. 1983), cert. denied, ___ U.S. ___,104 S.Ct. 436, 78 L.Ed.2d 367 (1983). This court in Ellis v. State,398 So.2d 402 (Ala.Cr.App. 1981), and Twymon v. State,358 So.2d 1072 (Ala.Cr.App. 1978), held confessions admissible although made by defendants with I.Q.'s of 59 and 57, respectively.
Mental abnormality of an accused is only one factor to be considered in determining from the totality of the circumstances the voluntariness and admissibility of a confession. Corbin v. State, 412 So.2d 299 (Ala.Cr.App. 1982);Shorts v. State, 412 So.2d 830 (Ala.Cr.App. 1981). The trial judge here had the benefit of observing the appellant's comprehension, demeanor, and the manner of answering on the stand. Testimony established that Gatlin and Tew read the waiver of rights form to Baker before he signed it. The officers also read his own statement to him before he signed it. We also cannot overlook the fact that the appellant had, prior to this murder, been convicted of three felonies, each of which resulted in his imprisonment. He, therefore, had had experience with arrest procedures, the making of statements, and the legal process. These factors, combined with the state's rebuttal, support a determination that under the totality of the circumstances, the appellant knowingly waived his rights and made a truthful confession. Therefore, appellant's claim that he did not properly waive his rights due to his inferior mental condition is hereby rejected.
Appellant's claim that he was so intoxicated at the time of his waiver of rights that it was not a voluntary waiver is also without merit. Alabama courts have held that "intoxication, short of mania or such impairment of the will and mind as to make an individual unconscious of the meaning of his words, will not render a statement or confession inadmissible." Eatonv. State, 423 So.2d 352 (Ala.Cr.App. 1982), Jackson v. State,375 So.2d 558 (Ala.Cr.App. 1979). The evidence indicated that Baker was not so drunk that his statement was involuntary.
 III
Appellant further states that as to Count II of the indictment, the state has totally failed to prove that he manifested extreme indifference to human life in general, as required by § 13A-6-2 (a)(2), Ala. Code (1975).
 "The difference between homicide by reckless conduct manifesting extreme indifference to human life, sometimes referred to as `universal malice murder,' and `purposeful' or `knowing murder' was set forth in Northington v. State, 413 So.2d 1169, 1170
(Ala.Cr.App. 1981), which stated:
 "`Reckless homicide manifesting extreme indifference to human life (13A-6-2 (a)(2)) must be distinguished from purposeful knowing murder (§ 13A-6-2 (a)(1)). . . . Under whatever name, the doctrine of universal malice, depraved heart murder, or reckless homicide manifesting extreme indifference to human life is intended to embrace those cases where a person has no deliberate intent to kill or injure any particular individual. . . . "The element of `extreme indifference to human life,' by definition, does not address itself to the life of the victim, but to human life generally"'" (Citations omitted).
Ex Parte Washington, 448 So.2d 404 (Ala. 1984). The shooting of the rifle could have been directed at either the victim or another person. After reviewing the facts, we conclude that it appears the act in all probability *Page 704 
was intended for the victim, but it was still directed at more than one person. Appellant's own statement was that he fired across the alley to "scare them" (Josephine, Billy Charles, and Marlene). The fact that the victim (Josephine) was not the only person on the other side of the alley when the appellant fired indicates that appellant had a disregard for all of their lives.
Hence, according to the standards set forth in Northington
and Washington, supra, the appellant was properly convicted under Count II of the indictment.
 IV
Did the trial judge err in not granting appellant's motion for acquittal under Count II of the indictment? No. As stated above, the record is replete with evidence that the appellant's act constituted "extreme indifference to human life," as set forth in § 13A-6-2 (a)(2), Code of Alabama 1975.
In Laffity v. State, 423 So.2d 280 (Ala.Cr.App. 1982), a case with facts similar to those of the present case, the court held that there was sufficient evidence to establish a prima facie case of murder under § 13A-6-2 (a)(2), Code of Alabama 1975, and to send the case to the jury. See also, Kontos v. State,363 So.2d 1025 (Ala.Cr.App. 1978). The court properly refused appellant's motion for judgment of acquittal.
 V
Appellant's final argument is that the trial judge erred in allowing one of his three prior convictions to be considered in the enhancement of his sentence. He contends that the record of a Georgia conviction did not show affirmatively that he was represented by counsel. Appellant urges that the Georgia conviction be expunged. The record reflects that on cross-examination appellant admitted that he had been convicted of aggravated assault with intent to rape in Georgia. We have held that "by admitting the prior conviction, the appellant relieved the state of the burden of proving the prior convictions." Whitt v. State, 461 So.2d 29 (Ala.Cr.App. 1984). The admission also relieves the state of the burden of proving that the accused was represented by counsel. Since appellant himself admitted this prior conviction, the trial court did not err in finding the defendant had three prior felonies and, thus, properly sentenced appellant.
AFFIRMED.
All the Judges concur.