323 So.2d 721

**Howard STEELE**

**v.**

**STATE.**

**7 Div. 347.**

Court of Criminal Appeals of Alabama.

Oct. 1, 1975.

Rehearing Denied Oct. 21, 1975.

---

Phillips & Watson, Anniston, for appellant.

William J. Baxley, Atty. Gen., and Frank L. Thiemonge, III, Asst. Atty. Gen., for the State.

TYSON, Judge.

The appellant was indicted for the first degree murder of one Clarence Baker by shooting him with a pistol. The jury found the appellant guilty of murder in the second degree and fixed punishment at ten years imprisonment. The trial court then entered judgment in accordance with this verdict, and thereafter overruled the appellant's motion for a new trial following a hearing.

The toxicologist's report and the weapon used by the appellant in the homicide were stipulated into evidence. The toxicologist's report indicated that the deceased, at the time of his death, had ethyl alcohol equivalent to 0.17 percent in his blood, and that his death was caused by a gunshot wound from a thirty-two caliber bullet delivered to the left anterior chest which lacerated the left subclavian artery. Also stipulated were a thirty-two caliber projectile removed from the body of the deceased and a white "tee" shirt which contained blood stains.

Clyde Turner testified that between 3:30 and 4:00 on the afternoon of August 12, 1974, he was driving in his automobile down Main Street in Piedmont, near where Ladiga Street intersected with Main Street. He stated that he observed the appellant, Howard Steele, stop his vehicle, that he saw him cross over and stand by the deceased's, Mr. Baker's car with a pistol in his hand, that he drove past them, and he saw the appellant turn and leave Baker's car. He stated that a short time later he went to the location where the deceased's 1973 automobile was parked and saw a shotgun unbreeched on the inside, that this was the location where the Pontiac car struck the corner of the Lang

Warehouse, that this was about one or two blocks from where he first observed the two men, that he saw two police officers there, one of whom was the brother of the deceased, this officer being one Fred Baker, and that the shotgun was lying on the front floorboard.

Tommy Posey testified that on the afternoon of August 12, 1974, he was riding a motorcycle on South Main Street in Piedmont, Alabama, near the intersection of Main and West Ladiga Streets. He saw two cars stop, and that he learned that the Ford automobile belonged to the appellant, Howard Steele. He saw Steele stop and get out of his car and walk across the street with a pistol in his hand, and then observed him start hitting the deceased with the pistol. He stated that he observed the appellant go into the deceased's car and then heard a sound as though a shot had been fired. He was not sure of the number of times he saw the appellant strike the deceased with the pistol before the gun fired, but that it was at least two or three. He testified that some five or ten minutes later he rode near the corner of the warehouse where the deceased's car was found and saw some police officers there, that they were putting Clarence Baker in an ambulance.

Hoyt Crook testified that he had been employed for thirty-two years by the Street Department of Piedmont, Alabama, and that shortly after 3:30 on the afternoon of August 12, 1974, he heard a loud crash and observed an automobile strike the corner of a warehouse located a short distance from the City Barn. He stated that he approached the car and saw the deceased, Clarence Baker, under the steering wheel, and that there was an unbreeched shotgun lying on the floorboard of the front seat. He testified that it was a little over a block from the point where he observed the vehicle strike the warehouse at the intersection of Ladiga and Main Streets in Piedmont. He stated that short-

ly thereafter some police arrived and placed the deceased in an ambulance.

The appellant's motion to exclude the State's evidence was overruled.

The appellant, Howard Steele, testified that he was a resident of Piedmont, Alabama, and was manager of the American Legion Club there. He testified that he knew the deceased, Clarence Baker, that at one time they had been friends, and that Baker was the manager of the VFW Club in Piedmont. He testified that he had been by his Club on the morning of August 12, 1974, driving on Main Street, when he saw the deceased at the intersection of Main and Ladiga Streets, that he made a turn, and after recognizing deceased driving a Pontiac automobile, he stopped his car and got out, that he had a pistol which had been turned over to him by his Legion Post Commander, Gary Buttram, with him. He stated that the pistol was a thirty-two caliber revolver. He stated that he stopped about twenty-five or thirty feet from the vehicle in which the deceased was riding, called to him, and walked over to speak to him. He said he endeavored to open the door of deceased's automobile, that the deceased reached for a shotgun, and as he did so he struck him with the pistol. He stated that he hit him two more times and the pistol in his hand suddenly discharged, that he was not sure the deceased had been shot, but he told him that he wanted him to be at the City Hall that night for a trial, and that the deceased for the past two weeks had been going about town making threats that he was going to kill him. He said that he did not know that the deceased had been shot until about thirty or forty minutes later after he drove away, and had been informed by a Mr. Ledbetter that the deceased had been shot.

At this point in the trial, the appellant sought to present evidence of the details of prior threats made upon him by the deceased, and as to the deceased's general

reputation. The trial court excused the jury and heard the appellant's motion, then denied same under *Sanders v. State*, 242 Ala. 532, 7 So.2d 483, stating that at this point in the trial there had been no evidence of self-defense which would justify the allowance of such testimony.

Thereafter the jury was returned to the box, and the appellant then continued to testify that his encounter with the deceased took place between 3:00 and 3:30 on the afternoon of August 12, 1974, at the intersection of Main and Ladiga Streets in Piedmont. He stated that as he first approached the deceased's automobile, he did not point the gun at the deceased or make any threat upon the deceased. He stated that there was supposed to be a trial that night at the City Hall on a burglary of the American Legion Club, and that the deceased was involved in this case. He stated that he had received word that afternoon that the deceased was trying to have the case postponed, and that he told him he wanted him to be at City Hall that night to take care of the case. He stated that as he did so, the deceased reached for his gun. From the record:

"Q. What was said by you or by him after you mentioned the case?

"A. Nothing was said then. Then he reached for the gun and that is when I hit him with my gun and it discharged. I didn't know he was shot. I hit him two more times and then I backed out of the car. I told him 'You be at City Hall tonight; I don't want to be running around here two more weeks with threats about you are going to kill me.'

"Q. Had you heard that he was going to kill you?

"A. Numerous times.

"Q. And you say up until the time he reached for the gun you had not raised that pistol from your side?

"A. No sir.

"Q. Did you at any time before he reached for that shotgun make any threats toward him?

"A. No sir.

"Q. Did you in any manner make any statement that you were going to kill him?

"A. No sir."

On cross-examination, the appellant testified that he had been the manager of the American Legion Club for approximately three years prior to the time of the incident in question, that he had gotten out of his car and approached the deceased's vehicle because of the pending burglary case that night at City Hall. He stated that the deceased had not called to him, but that he had stopped and gotten out of his car to discuss the matter with the deceased. He further testified that the windows were up, that he could not see inside the deceased's car until he opened the door, that shortly after he did so the deceased reached for the shotgun, and that was when he struck the deceased with the pistol. He further testified that he was about six feet two inches and weighed about 215 pounds, and the deceased was a small man, weighing about 150 pounds. He further testified he did not realize that the gun had been fired until he later talked with Leroy Ledbetter.

The appellant then presented a stipulation that one Troy Hunt, if called to testify, would state that he was one of the ambulance attendants who picked up Clarence Baker about a block from the intersection of Main and Ladiga Streets in Piedmont on August 12, 1974; that the deceased was taken to the hospital at Ft. McClellan, and that he found a shell in the left front pocket of the shirt of deceased, Clarence Baker, that the deceased had lacerations on the left side of his head, but that he did not know deceased had been shot until he was x-rayed at Ft. McClellan.

Ray Reagan testified that he was an employee of the Piedmont Water Works, that he also served with the Piedmont Rescue Squad and drove an ambulance, that he was with Troy Hunt when they answered a call to go to Ladiga Street where a vehicle had struck a warehouse. He stated that they found the deceased, Clarence Baker, slumped over the steering wheel of the car, that there was a shotgun lying on the front floorboard, unbreeched, that he spoke to the deceased, and as he did so he saw a spot on his head. He stated that he told him that he might ought to go to a doctor, and the deceased first stated that he did not want to go. He stated he saw Troy Hunt remove a shell from the pocket of deceased on the way to the hospital, but he did not know that deceased had been shot until he was x-rayed at Ft. McClellan.

Leroy Ledbetter testified that he was a self-employed automobile repairman and was Chairman of the American Legion Club in Piedmont. He testified that he was notified by two police officers to come to the club on the early morning of August 9, 1974, that when he arrived, Clarence Baker was in the custody of two policemen waiting outside American Legion Hall. He testified that on the afternoon of August 12, 1974, the appellant, Howard Steele, had left him in charge of the Legion Hall, and that he told him he was going down to City Hall to see about why the burglary case that was to be heard that night had been postponed. He stated that later that afternoon the appellant came back to the Legion Hall and talked with him. He testified that the appellant's general reputation in the community was good.

Jack Waites testified that he was a member of the City Council of Piedmont, employed by the Standard-Coosa Company. He testified that he went to Front Street with some police officers to investigate a scene where an automobile had struck the corner of a warehouse. He stated that as he arrived he saw the deceased, Clarence Baker, being placed in an ambulance, and that he observed a shotgun lying on the front floorboard of the car, pointed up. He stated that he observed a bottle of Vodka, which had been partially consumed, lying on the front seat, that he saw one of the police officers, who was Fred Baker, a brother of the deceased, Clarence Baker, take the bottle of Vodka and throw it against the warehouse, breaking it.

Ray Fagan testified that he operated a service station in Piedmont, Alabama, that he knew both Howard Steele and Clarence Baker. He testified that in the early afternoon of August 12, 1974, Baker had come by his station and bought some gasoline, that he appeared to have been drinking heavily.

Gary Buttram testified that he was Commander of the American Legion Post on August 12, 1974. He testified that, following a burglary of the American Legion Hall on Friday, August, 9, 1974, he had given his thirty-two caliber pistol to Howard Steele to use.

Joe W. Cambron testified that he had formerly been a police officer for the Piedmont Police Department on August 12, 1974. He stated that he investigated an accident at a warehouse on Front Street, that he remembers Officer Jack Waites being there, that he looked inside the Pontiac automobile and found a sixteen-gauge single-barrel shotgun lying on the front seat, that he later received one shell, which had been removed from the pocket of Clarence Baker. He observed Officer Fred Baker take a bottle of Vodka, which was inside the automobile, and throw it against the warehouse.

Police Officer Cecil Parrish testified that he was called to investigate the burglary of the American Legion Club on the early morning of August 9, 1974. He stated that Clarence Baker was at the Club and was charged with burglary. Upon being asked about threats made on this occasion, the court sustained the State's objection.

The appellant then presented a number of character witnesses who testified that his reputation in the community was good.

## I

■ The appellant cites as error the refusal of the trial court to permit the testimony of appellant as to the details of threats apparently made by the deceased upon him after his arrest on the night of August 9, 1974, at the American Legion Club, and also a statement allegedly given appellant by the deceased's wife to the same effect on the day of the homicide.

The general rule covering this situation is well-stated in *Sanders v. State*, 242 Ala. 532, 7 So.2d 483, as follows:

"None of such evidence is admissible when offered by defendant, if he was the aggressor in the difficulty which then and there resulted in the killing. For under such circumstances self-defense is not available to him. And if he approached deceased for the purpose of bringing on the difficulty, such plea is unavailing. *DeArman v. State,* supra [71 Ala. 351].

"There is nothing to sustain a claim that defendant did not deliberately go home and get his gun and then go to a place where he would meet deceased for the purpose of renewing the difficulty with him, or that there was any reason to get his gun and go to meet him other than to renew the difficulty, or that he could not have avoided the difficulty after he saw deceased and saw him with a knife, as he says. Such a situation was analyzed in connection with a claim of self-defense in the case of *Dunn v. State,* 143 Ala. 67, 39 So. 147.

"Before such matter is admissible, there must be a tendency of other aspects of the evidence to show that defendant was without fault in bringing on the fatal rencounter; that he was in imminent peril, real or apparent, of loss of life or limb, that he could not avoid the difficulty or retreat without increasing his peril. And if an act was committed by him in the nature of a present provocation, he was not without fault. Unless there is a tendency of the evidence favorable to defendant on those questions, he cannot prove the bad character of deceased for turbulence, nor threats by him toward defendant, nor a prior difficulty with him, though of a serious nature. . . ."

Moreover, as noted in *Parker v. State,* 266 Ala. 63, 94 So.2d 209, it was not here shown that the appellant did not have an opportunity to retreat. Further, it was not shown that the appellant did nothing to provoke the deceased, and it was not shown that the appellant could not have avoided the difficulty.

Clearly therefore, the trial court correctly did not allow the details of these prior specific acts of the deceased to be shown in this cause. *Byrd v. State,* 257 Ala. 100, 57 So.2d 388; *Farley v. State,* 279 Ala. 98, 182 So.2d 364; *Sanders v. State,* supra; *Parker v. State,* supra; *Plemmons v. State,* 42 Ala.App. 638, 176 So.2d 45.

We cannot say that the trial court should be placed in error for excluding such evidence when in fact such evidence was offered prior to evidence which might tend to show self-defense. Authorities herein cited.

## II

The appellant further argues that the trial court erred in refusing his requested written charge No. 2.

■ At the conclusion of the trial court's extensive oral charge, the appellant announced, "Satisfied," and the trial court then gave five written requested charges. Refused Charge No. 2 contains misspelled words, and hence was properly refused, *State v. Owen,* 279 Ala. 281, 184 So.2d

362; *Griffin v. State*, 284 Ala. 472, 225 So.2d 875; *Darby v. State*, 48 Ala.App. 421, 265 So.2d 449.

 Moreover, the charge in question was not properly predicated on the evidence in this case, and hence was argumentative, thus, the trial court properly refused same.

We have carefully examined this record and find no error therein. The judgment is therefore due to be and the same is hereby

Affirmed.

All the Judges concur.