329 So.2d 650

Lorenzo **BODY**

v.

**STATE.**

**6 Div. 972.**

Court of Criminal Appeals of Alabama.

Feb. 3, 1976.

Rehearing Denied March 9, 1976.

William J. Baxley, Atty. Gen., Montgomery, and Randolph P. Reaves, Asst. Atty. Gen., Birmingham, for appellee, the State.

———◆———

Robert C. Boyce, III, Bessemer, for appellant.

**594**

TYSON, Judge.

The appellant was indicted for the first degree murder of Roosevelt Duncan, Sr., "by shooting him with a pistol." At trial the jury found the appellant guilty of murder in the second degree and fixed punishment at twenty-five years imprisonment. The trial court then pronounced judgment, setting sentence in accordance with this verdict.

County Coroner J. P. Helton testified that an autopsy performed on the body of the deceased, Roosevelt Duncan, Sr., around mid-morning, September 7, 1974, at Bessemer Carraway Hospital, indicated that death resulted from a gunshot wound through the heart. He stated that he turned the projectile, which was removed from the deceased's chest cavity, over to the State Toxicology Office in Birmingham for a comparison test.

Charles Holland testified that when he entered the Chicken Shack in Bessemer, Alabama, on the night of September 6, 1974, he saw the appellant, Lorenzo Body, "standing in the back at the pool table." While at the Chicken Shack, he did not notice any disturbances, but later, as he was walking out the front door with Elmore Rutledge, he was shot in the back.

On cross-examination, Holland testified that Lewis Duncan and the deceased, Roosevelt Duncan, Sr., were brothers of his, and that they, too, were at the Chicken Shack on the night of September 6, 1974.

The testimony of Enoch Oliver and his wife, Brenda, owners and operators of the Chicken Shack, was essentially the same. They testified that on the night of September 6, 1974, they had a "pretty good night," that the crowd included the appellant, his cousin, Elmore Rutledge, and the three "Duncan boys"; Roosevelt, Lewis, and Charles Holland. Around 10:00 p. m. Mr. Oliver broke up an argument between Lewis Duncan and Elmore Rutledge (R. p. 20), at which time appellant was shooting pool (R. p. 21). Later, appellant walked over to the table where Elmore and Roosevelt were sitting, jerked a gun from Elmore's pocket (R. pp. 22, 35) and said, "Why do you keep arguing with the Duncan boys, don't argue with them, just shoot them all" (R. pp. 26, 35). Appellant then ran toward Charles Holland, who was heading toward the front door, and shot him in the back (R. pp. 22, 35). As this shot was fired, Roosevelt Duncan, Sr., who had been seated, jumped up and said to appellant, "What's wrong with you man" (R. p. 42), at which point appellant shot him too (R. pp. 22, 42). After shooting Charles Holland and Roosevelt Duncan, Sr., appellant pointed the pistol and pulled the trigger at Enoch Oliver and Lewis Duncan, but in neither instance did the weapon fire (R. p. 36). As appellant backed out the front door, waiving the pistol in the air (R. p. 23), he said, "Don't nobody move, don't mess with me none . . . if anybody move, I'll kill you everybody" (R. p. 36).

Both Mr. and Mrs. Oliver testified that on the night of the shooting, they did not see Roosevelt Duncan, Sr., involved in any arguments, nor did they see him with any weapon, and that the same applied to Charles Holland.

Detective Sergeant G. N. Franklin, of the Bessemer Police Department, testified that he received a phone call from the appellant at approximately 8:00 p. m. on the night of September 7, 1974; that he, accompanied by another officer, proceeded to appellant's house, located on Alabama Street in Bessemer, where the apellant met them and voluntarily turned himself in. Franklin testified that at the time of appellant's arrest, he turned over a .38 caliber Taurus pistol, Serial Number 813184, which, he, Franklin, immediately marked for identification and subsequently turned over to the State Toxicologist.

State Toxicologist Robert Johnson testified that, based on his tests, the bullet retrieved from the body of the deceased was fired by the pistol he received from Sergeant Franklin. (The gun and bullet were admitted into evidence as State's Exhibits Nos. 1 and 2, respectively.)

At this point the State rested its case and the appellant's motion to exclude was overruled by the trial court.

State's witness Charles Holland was recalled by the defense and identified State's Exhibit No. 1 as his uncle's pistol (R. p. 61). He explained that, seeing his uncle drunk, he had taken the pistol for safekeeping, but stated that on the night of the shooting, upon entering the Chicken Shack, he had given the pistol to Elmore Rutledge to keep for him (R. p. 62). Holland said that he and the appellant had a fight about a year before the shooting, but had been friends ever since.

The defense next called appellant's cousin, Elmore Rutledge. He confirmed that Charles Holland had given him a gun to hold upon his, Howard's, arrival at the Chicken Shack on the night of September 6, 1974. Rutledge said that he did not see anyone else with a gun, nor did he see or hear anyone arguing.

On cross-examination, Rutledge testified that he and appellant were cousins, that they had grown up with the "Duncan boys," Roosevelt, Lewis, and Charles Holland, and that they were all friends. He stated that he did not see any sort of weapon in Roosevelt's possession, and that he was not aware of arguing before the shooting.

Upon taking the stand, the appellant, Lorenzo Body, admitted to having, in 1971, plead guilty to a manslaughter charge in connection with another shooting (R. p. 71). As for the shooting in question, appellant testified that he heard his cousin, Elmore Rutledge, and Roosevelt Duncan, Sr., arguing, that he walked over to where they were sitting, and told his cousin not to argue with Roosevelt because "You know how he act about women" (R. p. 74). According to appellant, Roosevelt got mad and told him to leave the table, but he, appellant, replied, "You can't make me," at which point Roosevelt jumped up as if to attack (R. p. 74). Appellant testified that he snatched the pistol from Elmore's pocket and began to back up, but fired when he saw the other two Duncans, Charles Holland and Lewis, were moving toward him; Lewis with a pistol in his hand, and Charles with his hand behind his back. Appellant stated that he had seen Charles with a pistol earlier in the evening and was not aware that he had given it to Elmore. Appellant added that he had "been into it" with all of the Duncan boys in the past (R. p. 74). The appellant concluded his testimony by saying that as he was leaving the premises, Lewis Duncan came running out the front of the Chicken Shack and fired at him (R. p. 82). Following appellant's testimony defense rested.

In rebuttal for the State, Lewis Duncan testified that on the night in question he did not have a gun in his possession.

# 596

## I

■ During the cross-examination of State's witness Enoch Oliver (the owner of the "Chicken Shack"), we find the following exchange (R. pp. 31, 32):

"Q (Mr. Boyce) Mr. Oliver, do you have any sort of beer license?

"MR. COOK: I object to that.

"THE COURT: Sustained.

"MR. SHAW: In response to the State's objection we except and ask the Court to allow us to go into it because we feel it would definitely lead to material evidence against the business relations of Enoch Oliver or affect the possibility of losing his license or being somewhat affected in a business manner, might alter or prejudice his testimony.

"THE COURT: Overruled (The motion just made by Mr. Shaw)."

We fail to see where the question of "whether the witness had a beer license or not" would shed light on the existence of any possible bias. Moreover, it appears that such evidence is remote, and therefore irrelevant in its objective. *James v. State*, 52 Ala.App. 389, 293 So.2d 305, and authorities therein cited.

## II

■ Appellant also asserts that the trial court erred in refusing to allow testimony as to the deceased's (Roosevelt Duncan's) character or reputation in the community for violence.

More specifically, during the recross-examination of Enoch Oliver, we find (R. pp. 60–61):

"Q (By Mr. Boyce) Mr. Oliver, do you know the general reputation in the community of Roosevelt Duncan for violence?

"MR. COOK: We object to that, Your Honor, no evidence he knew that.

"THE COURT: Sustained.

"MR. BOYCE: Except."

Suffice it to say that at this point in the trial, no testimony as to self-defense had been presented, thus, the trial court's ruling was correct. *Russell v. State*, 46 Ala.App. 230, 239 So.2d 902. See also *Steele v. State*, 1975, 56 Ala.App. 539, 323 So.2d 721, cert. denied 294 Ala. ——, 323 So.2d 726 1975.

We have carefully examined this record and find no error therein. The judgment is therefore due to be and the same is hereby

Affirmed.

All the Judges concur.