182 So.2d 364

Donald Dalton FARLEY

v.

STATE of Alabama.

6 Div. 108.

Supreme Court of Alabama.

Jan. 6, 1966.

Rehearing Denied Feb. 10, 1966.

Beddow, Embry & Beddow, Birmingham, for appellant.

Richmond M. Flowers, Atty. Gen., and John C. Tyson, III, Asst. Atty. Gen., for the State.

MERRILL, Justice.

Appellant appeals from a judgment and sentence of thirty-five years imprisonment based upon a verdict finding him guilty of murder in the second degree. He shot and killed Elouise Goldwin on September 24, 1963. Motion for a new trial was overruled.

Appellant owned the establishment known as Curley's Barbecue on 41st Street between 1st Avenue North and 1st Avenue South in Birmingham. The deceased operated it for him while he worked for a pest control company, and he assisted her when he was not working at his regular job.

Around 6:30 P. M. on the day of the shooting, a woman, Jean Wisner, who was going to start working in the restaurant the next day, a customer, W. T. George, who had been there before, and the deceased were in the public part of the restaurant and a colored woman and a colored boy were in the kitchen. Appellant came into his place of business and by his own testimony and that of Jean Wisner, he had been drinking. He told deceased he needed some money for tire repairs on his car; she gave him $2.00, he said he needed more and she gave him $5.00 from the cash register. She showed him how she had rearranged some furnishings and he told her that he had seen one James E. Milam at Barney's Place on Fifth Avenue and 52nd Street North and that Milam told him that he had

shot up Curley's Place once and "if I didn't like it he would shoot me."

While the deceased was standing behind the cash register, appellant grabbed deceased around the neck and Jean Wisner pushed him away from the deceased. He came out in front of the counter and reached across it for a pistol which was under the counter. The deceased tried to keep him from getting it but failed. Both Jean Wisner and W. T. George testified that appellant asked, "Don't you believe I will shoot you?", and the deceased replied, "Yes, I believe you will," and he fired the pistol one time and she was struck in the head by the bullet and killed. At that moment, W. T. George, sitting at the counter, was about three feet from the deceased and four feet from appellant.

Appellant based his defense upon proving that he accidentally killed Elouise Goldwin. He attempted to prove this by showing that he had the gun in his hand because his life had been threatened that afternoon by Milam and that he believed such threat because of Milam's reputation for violence.

The trial court let appellant testify that he had seen Milam that afternoon, and that Milam had said that he had shot up Curley's Place once "and if I didn't like it he would shoot me." These quotations from the record followed that statement:

"Q At that time, did you know his (Milam's) general reputation in the community in which he worked, or in the community in which he lived, for being a turbulent, violent, blood-thirsty, uncompromising individual? Answer 'yes' or 'no.'

"MR. BARNARD: We object to that, Your Honor. No proper bearing.

"THE COURT: Sustain the objection."

Counsel for appellant excepted and presented his argument why the testimony should be admitted. The court gave his reasons for the ruling, again sustained the

objection, and counsel reserved an exception.

■ The ruling of the trial court was correct.

■ In Alabama after evidence has been adduced in a homicide case tending to show that the defendant acted in self-defense, evidence as to the violent and dangerous character of the deceased and evidence as to previous threats against the defendant is admissible, and such evidence is admissible in a criminal or civil case. Butler v. Hughes, 264 Ala. 532, 88 So.2d 195, and cases there cited.

■ But in the absence of a tendency of the evidence to show that the defendant was without fault in bringing on the fatal encounter, that he was in imminent peril, or that he could not avoid the difficulty or retreat without increasing his peril, the defendant cannot prove the bad character of the deceased for turbulence, nor threats by him toward the defendant, nor a prior difficulty with him, though of a serious nature. Sanders v. State, 242 Ala. 532, 7 So.2d 483; Sidney v. State, 265 Ala. 136, 89 So.2d 745; Jones v. State, 37 Ala.App. 467, 70 So.2d 543.

Here, there was no evidence of self-defense and by appellant's own testimony he was the aggressor, and evidence of the deceased's reputation for turbulence would not have been admissible. But appellant sought to prove such a reputation, not for the deceased, but for one Milam who was not present.

In Goldsmith v. State, 105 Ala. 8, 16 So. 933, the defendant claimed he was seeking to stop a difficulty and "Emma Aarons then seized hold of him with one hand, and attempted to strike him with a stick, and at this time the deceased, General Evans, a son of Emma Aarons, approached the defendant with a stick and club in a threatening attitude, when he fired, and killed deceased." The defendant offered to prove the general reputation of Emma Aarons for

peace and quiet was bad, seeking to show that she was a woman of turbulent and dangerous character. The trial court sustained objection to this testimony and this court affirmed and said: "We cannot extend the rule as here insisted for the appellant."

There, the evidence was not admissible as to an assailant of the defendant at the time he killed the deceased. Here, as already stated, the person whose character for turbulence was sought to be questioned was not even present. The trial court correctly sustained objection to the question.

The foregoing was the only question argued in brief by appellant. We have found no other ground for reversal or that merits discussion.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and HARWOOD, JJ., concur.