297 So.2d 383

**Webster MITCHELL, Jr., alias**

v.

**STATE.**

**5 Div. 198.**

Court of Criminal Appeals of Alabama.

April 23, 1974.

Rehearing Denied June 4, 1974.

Richard D. Lane, Auburn, for appellant.

**60**

William J. Baxley, Atty. Gen., Montgomery, and Roger M. Monroe, Sp. Asst. Atty. Gen., Birmingham, for the State.

BOWEN W. SIMMONS, Supernumerary Circuit Judge.

Appellant-defendant, an indigent with appointed counsel here and in the nisi prius court, was indicted for second degree murder, convicted therefor, and sentenced by the jury to forty (40) years in the penitentiary. The victim was Jessie Maddox.

It appears from the evidence of the state that the appellant in the late afternoon of Sunday, April 29, 1973, left his home, armed with a kitchen butcher knife, and upon reaching the home of Gloria Petty (both houses being in Opelika, Lee County, Alabama) he encountered Edward Melvin (Tim) Dowdell, who as we read the evidence had been living with appellant's wife, from whom the appellant had been separated for a short period of time. They were not divorced.

Some unpleasant words ensued between them, whereupon Tim (as he was called) ran from the house of Gloria Petty with the appellant close behind and giving chase. Each, during the pursuit, chunked bricks at one another. During the course of the brick chunking, appellant threw the butcher knife at Tim.

During the course of the chase, the two came in bodily contact at which time one James Baker grabbed Tim and undertook to separate the two, while Jessie Maddox, an onlooker, grabbed the appellant. The two combatants, through the efforts of the two peacemakers, Baker and Maddox, were separated and Tim hurriedly left the scene of combat, leaving Maddox and the appellant grappling. Maddox called for his automobile to take the appellant home, but his efforts in this particular were unavailing.

It was during the encounter between the appellant and Maddox that the appellant retrieved his butcher knife from the ground, or at least produced it, and stabbed Maddox twice. One wound was at the base of the neck and the other in the right side of the chest. During the combat, a brother of the appellant, John Albert Mitchell, came up and in his contact with the alleged peace efforts of Maddox got cut in the finger with the knife. One or both of the stab wounds on Maddox caused his death at the scene.

It further appeared that some police officers of Opelika were notified and responded to the call. Appellant got in the police car voluntarily and while in the car was advised that he was under arrest for the murder of Maddox.

He was later given the Miranda warnings (in detail) by a police officer. These warnings the appellant acknowledged in writing. He thereupon gave a signed statement in which he admitted the stabbing and other details of the encounter. This statement was admitted in evidence at the instance of the state.

The evidence was also offered by the state that alcohol was on the breath of the appellant when he was arrested, (soon after the homicide) but he was not drunk or intoxicated. The officers testified that he was sober.

The butcher knife, which had human blood on it, was located by the officers about three feet from the deceased in some weeds near a telephone pole.

There was evidence that Maddox did not have a weapon of any kind, and none was found on him or near the scene except the butcher knife carried and used by the appellant.

The written statement of the appellant introduced and admitted in evidence at the instance of the state comported in many versions with the oral evidence of the appellant adduced after the state rested.

Nowhere in the statement did the appellant state that the deceased was choking him. This claim was made in appellant's oral testimony when he took the stand. He said in the statement that in an effort to prevent Maddox from getting the knife on the ground, he grabbed Maddox and threw him down. He said the next thing he knew Maddox had him by the collar in the front of the shirt; that Maddox called his girlfriend, Eva Nell Edwards, to go and get his car so he could carry appellant home. After begging Maddox to turn him loose which was not done, appellant looked and saw the knife he had carried lying on the ground; that he picked it up and "juged" him twice in the front. Maddox fell down and then appellant walked off and went back toward his brother's house; that he threw the knife in the grass behind a telephone pole. He next saw the police and flagged them down. He then got in the police car.

Appellant testified in court that on April 29, 1973, which was Sunday, he reached his home Sunday evening and got a knife for his own protection and was going to his brother's home and saw Tim Dowdell at the home of Gloria Petty, where he had learned his wife was; that he wanted to talk to her and get back together; that he saw James Baker, to whom he wanted to talk.

Then it was that Tim Dowdell came to the door, and while they were talking about his wife, Tim threatened to cut his neck off and pulled out a little knife and then he backed out the door. Appellant hit the ground on the porch side and Tim ran down the doorstep. The chase began and brick throwing took place. During the chase, Tim picked up a piece of iron and swung it at appellant and thereupon the appellant threw the knife at Tim. During the encounter, the appellant said Maddox had him and was choking him.

According to appellant, he and Maddox, on a previous occasion several weeks before, had argued over a drink and Tim threatened to kill appellant the next time he caught him. Appellant further contended in his testimony that Maddox grabbed him and while holding the appellant by the collar, the appellant saw the knife on the ground and beat Maddox to it. It was then that he "juged" Maddox with the knife to get him loose; that he was scared of Maddox and was not intending to kill him. We omit further details of the homicide and the factual evidence leading up to it. We now address the points of law here presented by appellant's counsel.

## I.

■ Appellant contends that the court erred in refusing to give appellant's requested charge nine reading as follows:

"9. The Court charges the jury that if you find from the evidence in this case that the defendant cut under a bona fide belief that his life was in danger or that he was in danger of great bodily harm and had under all circumstances reasonable cause to beleive (sic) that he was in imminent danger at the moment he cut the deceased, it would be immaterial whether there was such actual danger or not."

While the refused charge embraces a correct statement of law, we think it was substantially and fairly covered by the

oral charge wherein the court gave the three elements of self-defense and defined imminent danger as real or apparent. This informed the jury of the character of imminent danger.

The court further charged the jury that in a homicide case the burden rests upon the appellant to offer some evidence tending to show, (1) that he was in actual and imminent danger of death or serious bodily harm, or (2) that he honestly and reasonably believed that he was in such danger by reason of circumstances apparent to him.

The court further instructed the jury in his oral charge; "(1) The appellant must be free from fault in bringing on the difficulty. (2) He must be in imminent danger either real danger or apparent danger, that is, he thinks he is in imminent danger of losing his life or suffering grave and serious bodily harm. (3) He must retreat if there is an avenue of retreat open, unless by retreating he increases or enhances the danger of losing his life."

In view of the court's oral charge, supra, we are unwilling to commit the trial court to reversible error in refusing charge nine. Title 7, Section 273, Recompiled Code 1940. We do not necessarily approve or disapprove everything the court said, supra, as being correct statements of law. Suffice it to say, the refused charge was substantially and fairly covered.

## II.

■ The next complaint is that the trial court erred in sustaining the state's objection to appellant's question to Dorothy Mitchell as to whether she knew the general reputation of deceased in his community or the neighborhood in which he lived for peace and quiet.

There was no evidence adduced nor any offered to make such adduction that deceased was a violent, dangerous, bloodthirsty and turbulent man. This court in

Wilson v. State, 31 Ala.App. 21, 11 So.2d 563, cert. den., 243 Ala. 671, 11 So.2d 568, said:

"The rule seems to be that 'it is improper to inquire into the general character of the deceased for peace and quiet without coupling such proof with proof of whether or not he was a violent, dangerous, bloodthirsty, turbulent man, even where there was some evidence of self-defense on part of defendant.' Tribble v. State, 145 Ala. 23, Headnote 1, 40 So. 938, 939; King v. State, 17 Ala.App. 381, 85 So. 876; Dyson v. State, 28 Ala.App. 549, 189 So. 784."

Nor was there any evidence of self-defense at this stage of the trial. Farley v. State, 279 Ala. 98, 182 So.2d 364(2).

There was no error in the court's ruling.

## III.

■ Appellant next asserts that the trial court erred in admitting in evidence the confession of the appellant for that, (1) appellant was at the time intoxicated and (2) it was not shown that the confession was voluntary.

We think this contention also is without merit. Officer Dan Davis testified that the confession was taken about five hours after he saw appellant at the scene; that he was sober, although he still had the "remains of alcoholic beverage about him." Appellant testified that he had not been drinking that Sunday afternoon. The statement was given about ten o'clock that Sunday night.

We do not think the evidence sustained appellant's contention that he was intoxicated at the time he gave the statement. More than ten hours had elapsed since the appellant had taken a drink.

The officer testified that prior to making the statement, no one had offered the appellant any hope of reward or other in-

ducement to get him to make a statement, or made any threats toward him to induce the statement.

The officer testified that he advised the appellant at the scene, when the appellant was in the police car, that he was under arrest for murder.

### IV.

The next instance is that the trial court erred in refusing to give appellant's written requested charge two. This is the charge directing the jury to find the appellant not guilty.

We hold that the evidence justified submission of the case to the jury for their determination under the evidence as to the guilt vel non of the appellant. This charge was properly refused.

### V.

■ Appellant next asserts the court's refusal to give his requested charge ten was error. This charge is quite lengthy.

We have examined this written charge and compared it with the court's oral charge relating to self-defense. We conclude that the oral charge substantially and fairly covered this refused charge, which is more explicit than some like phases of the oral charge, but the principles that appear in the oral charge are sufficient. Refusal was not error.

We have read the entire record verbatim. We conclude that the trial was free of prejudicial error. The judgment is due to be and the same is hereby affirmed.

The foregoing opinion was prepared by the Hon. BOWEN W. SIMMONS, Supernumerary Circuit Judge, serving as a judge of this Court under Section 2 of Act No. 288, July 7, 1945, as amended; his opinion is hereby adopted as that of the Court.

Affirmed.

CATES, P. J., and TYSON, HARRIS and DeCARLO, JJ., concur.

### ON REHEARING

BOWEN W. SIMMONS, Supernumerary Circuit Judge.

On reconsideration of refused charge No. 9 in section one of this opinion, we conclude that the charge states a correct principle of law as to the element of self-defense relating to danger, but was properly refused for that it leaves out the question of freedom from fault and retreat. Gipson v. State, 262 Ala. 229, 78 So.2d 293(1); Amerson v. State, 43 Ala.App. 148, 182 So.2d 901, cert. den., 279 Ala. 685, 182 So.2d 906. Moreover, the court's oral charge covered all three elements.

■ We pretermit considering that part of the oral charge wherein the court charged the jury that the *burden* was on the defendant to offer evidence relating to certain specified elements of self-defense. There was no exception or objection taken to this placement of "burden." Lester v. State, 270 Ala. 631, 121 So.2d 110; Buckles v. State, 291 Ala. 359, 280 So.2d 823.

The foregoing was prepared by Hon. Bowen W. Simmons, Supernumerary Circuit Judge, serving as a judge of this Court under § 2 of Act No. 288, July 7, 1945, as amended; his decision is hereby adopted as that of the Court.

Opinion extended. Application for rehearing overruled.

All the Judges concur.