HARRIS, Judge.
Appellant was convicted of murder in the second degree and was sentenced to 60 years imprisonment in the penitentiary. He was represented by retained counsel throughout the trial proceedings and at arraignment he pleaded not guilty. At the time sentence was imposed he gave notice of appeal. Trial counsel represents him on appeal.
The evidence was conflicting in the extreme. The testimony presented by the State tended to show that appellant shot the deceased while he was either sitting or leaning on the hood of an automobile, talking to several men. Appellant asked the men around the automobile to get out of the way and when they moved, he shot the deceased one time with a shotgun, using number — buckshot. The deceased was transported to the hospital but was dead on arrival.
The shooting took place in front of-a “shot house” and there was testimony that the deceased was drunk or “very high” from drinking alcoholic beverages, and had made several threats to kill appellant before the day was over. These threats were made directly to appellant in the presence *5 of several defense witnesses. The deceased cursed appellant during these threats, calling him all kinds of bad names. Some of the State’s witnesses testified they did not hear the deceased threaten or curse appellant, and that at the time appellant made the fatal shot the deceased was not armed.
It is undisputed that early in the morning the deceased had an automatic rifle and that he shot the rifle several times in an alleyway and under a neighbor’s house. The aunt of the deceased came out of her house and took the rifle from the deceased and took him into her house. Later the deceased got the rifle and took it to the car on which he was sitting or leaning when he was shot. The barrel of the gun was placed downward in the car with the stock sticking up above the level of the window.
Appellant admitted that the woman who ran the “shot house” requested that he go purchase her some whiskey and he left the house to comply with her request. On the trip to purchase the whiskey appellant went to a store and bought three number 4 buckshot shells. Before he returned he loaded the shotgun by putting one shell in the chamber and one in the magazine and he put the shotgun on the floorboard of his car.
When he returned from his errand he claimed that he had to stop at a stop sign near the house where the deceased was at the car and that his car choked down. At this point appellant claimed that the deceased again threatened to kill him and that he got out of his car with his shotgun. He stated that at this time he saw the deceased reach into the car and put his hand on the rifle and when he saw this, he shot toward the deceased, but he was not sure at that time that he had hit him. Appellant denied that he told the other men near the deceased to get out of the way. He did not recall cocking the shotgun but knew he fired it.
Appellant further testified that after he shot the deceased he got in his car and drove to the Police Department where he told an officer that he had just shot the deceased. He had a .38 caliber pistol on him at the time he was searched at the Police Department but claimed that he did not have the pistol on him at the time he killed the deceased with the shotgun blast. He explained the possession of the pistol by saying that while he was at the police station he went to his car to get some cigarettes and when he opened the glove compartment to his car he saw the pistol and put in in his pocket.
Several witnesses testified that the deceased had a bad reputation in the community in which he lived. They also stated the deceased had a bad reputation for being bloodthirsty, turbulent and violent.
Appellant testified that he and the deceased were friends and they were supposed to go fishing together the day after the shooting so that the deceased could teach him how to shoot the shotgun that he had owned for only three or four weeks. He stated there were times when he was a little afraid of the deceased.
Appellant claimed he shot the deceased in self-defense and the trial judge charged the jury fully on the law of self-defense. Notwithstanding appellant’s claim of self-defense he admitted that he drove to a store and bought buckshot shells, loaded his gun and returned to the very place where he claimed the deceased had threatened to kill him. Appellant came back fully prepared for trouble and in addition to a shotgun loaded with buckshot he also had a .38 caliber pistol. No witness supported his claim that the deceased had his hand on the rifle when appellant fired the fatal shot.
When the investigating officer found the deceased’s rifle it was unloaded and in the closet of his home. Appellant’s claim of self-defense is weak — so weak the jury rejected it and gave him 60 years. The jury felt very strongly that appellant was not free from bringing on the difficulty and that he gunned down an unarmed man who was highly intoxicated. And, too, the jury had every reason to believe, from the evidence, that appellant’s life was not in imminent danger when he shot and killed the deceased.
*6 Under the facts and circumstances of this case the trial judge was most generous to appellant in charging the jury on the law of self-defense. The totality of the circumstances surrounding the killing did not justify such charge.
Appellant makes only one claim of error on this appeal and that is the refusal of the trial court to give the following written charge to the jury:
“The Court charges the jury that if they believe from the evidence that the deceased was of a violent and bloodthirsty character they are to take such evidence into consideration in determining the degree of the defendant’s guilt, provided they find him guilty.”
One of the State’s witnesses testified that when appellant returned to the scene of the shooting he got his shotgun out of the car and told the men standing around the car where the deceased was, to stand back, that he was tired of that boy bothering him, and then appellant shot the deceased.
In McCaghren v. State, 52 Ala.App. 509, 294 So.2d 756, we held:
“After evidence has been adduced in a homicide case tending to show that the defendant acted in self-defense, evidence as to the violent and dangerous character of the deceased and evidence as to previous threats against the defendant is admissible. But,
‘in the absence of a tendency of the evidence to show that the defendant was without fault in bringing on the fatal encounter, that he was in imminent peril, or that he could not avoid the difficulty or retreat without increasing his peril, the defendant cannot prove the bad character of the deceased for turbulence, nor threats by him toward the defendant, nor of a prior difficulty with him, though of a serious nature.’ Farley v. State, 279 Ala. 98, 182 So.2d 364; Sanders v. State, 242 Ala. 532, 7 So.2d 483.”
We do not think under the facts and circumstances of this case that the trial judge committed reversible error in refusing the above-quoted charge.
A careful search of the record reveals no error and the case is due to be affirmed.
AFFIRMED.
All the Judges concur.