HARRIS, Judge.
Appellant was convicted of murder in the second degree and his punishment was fixed at imprisonment in the penitentiary for a term of 25 years. With retained counsel at arraignment a plea of not guilty was interposed by appellant. After conviction appellant gave notice of appeal and petitioned the trial court for a free transcript and the appointment of counsel to represent him on appeal. After a hearing appellant was determined to be indigent and a free transcript was furnished him and trial counsel was appointed to represent him on appeal.
The evidence in this case is in hopeless conflict and this made and presented an issue for the jury to resolve. The jury resolved this issue against appellant.
Mr. John Vinson testified that he had known appellant and the deceased about a couple of years. He said that on the morning of December 18, 1975, he was at appellant’s garage located near Street’s Restaurant on Highway 31 in Autauga County, Alabama, when a shoot-out took place be *1037 tween appellant, the deceased, Pearson Weaver, Jr., and Wayne McCrory. While Vinson was talking to appellant and one Jack Scarborough the deceased and McCro-ry drove up to a nearby restaurant and Jack Scarborough left saying he was going into the restaurant to kick the deceased and McCrory out.
Vinson further testified that a few minutes later the deceased and McCrory, who had a bottle in his hand, came out of the restaurant and McCrory threw the bottle against the side of the garage. He testified that at this time appellant took his long barrel gun and walked out of the garage. Shortly thereafter he heard shots and saw the window on the passenger’s side of the car of the deceased was shattered and he ran and hid under some old tires in front of the garage. While hiding he heard more shots but he did not see who was shooting and he ran from the scene. He stated he could not tell whether the shots were from a pistol or a shotgun.
Mrs. Miyoka Street testified that on the date of the shooting she operated Street’s Restaurant near appellant’s garage. She stated that Jack Scarborough was her son-in-law and that on the morning of the killing the deceased and McCrory came in her restaurant and in a few minutes her son-in-law, Jack Scarborough, came in and asked her permission to throw the deceased and McCrory out and she refused, saying they were her customers. The deceased told Mrs. Street he would leave only at her direction and then she asked them to leave. As they got up to leave, McCrory told Scarborough to keep his hands off his gun. McCrory picked up a chair and attempted to hit Mr. Scarborough but he did not actually hit him and McCrory walked out.
Mrs. Street further stated that soon after the deceased and McCrory left she heard shotgun fire. She walked outside and saw the deceased was bleeding. He had a shotgun in his hands and he was kneeling on the ground outside his car and aimed the gun at her. She asked him what he was doing and he said, “Jack shot me,” and she told him, “No, Jack didn’t do it, because he was in the restaurant with me.” The deceased told her if Jack didn’t do it, then he wanted to talk to Jack. At that point appellant came out of the garage with a shotgun in his hand and she went back in the restaurant to call the police.
Mrs. Street further testified that she heard the deceased ask appellant why he had shot him and as she turned around she heard more shots. She saw McCrory running toward a boathouse with a pistol in his hand. Mrs. Street stated that Scarborough owned one side of the garage and appellant owned the other side. She stated that a Mr. W. L. Hubert really owned the garage and rented it to the deceased who then rented part of it to Mr. Scarborough. She stated that prior to the shooting she had heard the three men, appellant, deceased and McCrory had been engaged in an argument.
Edward Wayne McCrory testified that he was 20 years of age and had previously been convicted of assault with intent to rob. He was on probation at the time of appellant’s trial. He stated he had known the deceased for six years and was working for him on the date of the killing. He further said that on the night preceding the shooting he and the deceased went to the deceased’s shop to put brakes on a trailer truck. He said although Mr. Scarborough forbade them to use the garage, they used it anyway. On the morning of .December 18, 1975, appellant picked up McCrory and they drove to Street’s Restaurant. After they entered the restaurant Mr. Scarborough came in and threatened to throw them out. Mrs. Street told Scarborough they were her customers and she would take care of the situation, Mrs. Street asked them to leave and just before they left Mr. Scarborough charged at him and he (McCrory) picked up a chair and drew it back to strike him but put it down. Then McCrory and the deceased went out the place together. McCrory stated that when he got outside he threw a coke bottle in some weeds near the garage; that the deceased got in the car on the driver’s side and reached over to unlock the door on the passenger’s side and he entered the car.
*1038 He further testified that after he entered the car he closed the door and the window glass on his side of the car shattered and he immediately felt a real bad pain in his neck and back. He slid to the floorboard of the car and was bleeding badly. At this time he heard more shots and he saw the deceased open his side of the car, and was kneeling down trying to get his shotgun out of the back of the car. He stated he and the son of the deceased had been hunting the weekend before that and the son had left the gun in the back seat of the car. They had been deer hunting.
McCrory then heard some more shots and saw the deceased fall to the ground and knowing the deceased had a pistol in the glove compartment of the car, he pulled himself from the floorboard of the car and got the pistol and moved over to the driver’s side of the car. He saw the deceased on the ground and blood was all around him and he put one foot on the ground and had his other foot inside the car. He looked up and saw appellant standing about four feet from him and he was pointing the shotgun straight at his head. McCrory asked appellant twice to please not shoot him, but appellant stepped back a foot and put the shotgun to his shoulder and indicated that he was going to shoot him. McCrory then started shooting at appellant who turned and ran toward the garage door, and McCrory then ran to the boathouse. When the police officers arrived, McCrory surrendered the pistol. He was carried to the hospital and the doctor told him he had 35 to 40 pellets in his neck and back. He stated the doctor told him he could not remove the pellets because to do so might paralyze him. He was transferred to the Selma Medical Center where he was treated and then discharged to his home. The pellets were still in his neck and back at the time of appellant’s trial.
Mr. Richard Roper, Assistant State Toxicologist, whose qualifications were admitted by defense counsel, testified as to the cause of death of the decedent. He stated that in his opinion death resulted from “central nervous system trauma or brain damage and hemorrhage or massive bleeding, associated with multiple shotgun wounds to the body.” He stated that based upon his examination the deceased was shot twice and very probably was in a lying-down position when he was shot.
Mr. Charles Wesley Smith testified that on December 18, 1975, he was employed as a Criminalist with the Alabama Department of Toxicology and Criminal Investigation. He stated his educational background and experience in his field and his qualifications were not questioned. He stated that his experience with firearms identification and comparisons would probably exceed 2000 cases and that he had given testimony in court on numerous occasions.
He further testified that he received from Mr. Roper a small packet containing 13 lead pellets in connection with appellant’s case, along with two shotguns, a revolver, live and expended shotgun shells. He said that he received ten expended shotgun shells. The 13 lead pellets were removed from the body of the deceased and these were number four shot. He test-fired the shotgun that was taken by the officers from appellant and made a microscopic comparison and determined that seven of the expended shells were fired from that particular shotgun and the other three were very probably fired from the same gun. He further stated that none of the expended shells was fired from the shotgun that was found under the body of the deceased. There was no indication that the gun of the deceased had been fired at all.
Glen Singleton testified that on December 18, 1975, he owned Sports Marine, a metal fabricating business about 45 yards from Street’s Restaurant. He stated that while in his office he heard the sound of a shotgun. He moved to a side window and saw Mrs. Street coming from the area of the restaurant and the garage. At this time he also saw appellant approaching and observed him fire four shots between the restaurant and the garage. He said that appellant kicked the left side panel of the car and motioned with a shotgun. At this time Mr. McCrory came out of the car and *1039 he and appellant exchanged a few shots. After this exchange of gunfire Singleton went back to the garage.
Officer Rayburn Hill of the Prattville Police Department was called to the scene of the shooting and saw appellant standing with a shotgun in his hands and saw the deceased lying on the ground. He further stated that State’s Exhibit 1 was the pistol taken from McCrory, and State’s Exhibit 7 was five spent cartridges that came from that pistol. He stated that State’s Exhibit 5 was the shotgun taken from appellant and that State’s Exhibit 6 was the un fired shotgun that was beneath the body of the deceased.
Officer Merrill Evans of the Prattville Police Department went to the scene of the shooting with Officer Hill and he observed that both appellant and McCrory were bleeding.
At this point the State rested its case and there was no motion made to exclude the State’s evidence.
Ms. Dorothy Lee testified that she was a Deputy Sheriff of Autauga County and kept a record of all pistol permits issued by that Department. She stated that McCory and the deceased did not have permits to carry a pistol during the year 1975. She further stated that the deceased had been issued permits for four years prior to 1975 but had not renewed his permit for 1975.
Jack Scarborough testified that on December 18, 1975, he was near the Street Restaurant and saw the deceased and McCrory enter the restaurant. He stated that appellant tried to get him not to go to the restaurant in pursuit of the deceased and McCrory, but he went to the restaurant anyway. He said his purpose in going into the restaurant was to get these men out as he did not want them around his family. He stated that while he was in the restaurant he saw the deceased had a pistol in his pocket.
Scarborough further testified that another reason he did not want the deceased and McCrory around was they broke into his shop the night before and took several dollars worth of his equipment. He had denied them permission to use his shop but they forcibly entered anyway. Mr. Scarborough stated that he had rented the building from the deceased who was renting it from a Mr. W. L. Hubert. He further stated that when the deceased and McCrory left the restaurant he could no longer see them but he immediately heard gunshots.
Scarborough further testified that the night before the shooting, he, Mr. Vinson and appellant had discussed his troubles with the deceased and McCrory. He said that before going into the restaurant he talked to the appellant about killing the deceased and McCrory and that he would have shot them the night before, but for the fact that his wife stopped him. He further stated that on the morning of December 18, 1975, he and appellant had drunk a beer; that the shotgun that appellant used to kill the deceased did not belong to Scarborough.
Appellant testified that on the morning of the difficulty he saw the deceased and McCrory near his garage and one of them threw a bottle on top of his shop; that when he went out to see what was going on he got shot by McCrory and he returned to his shop, got his shotgun and came back shooting. Appellant said that the deceased pointed a shotgun at him and that he shot the deceased three times before the deceased could fire. He said that after McCrory shot him McCrory ran behind the restaurant. Appellant admitted that he had two beers before the shooting.
Appellant offered the testimony of three witnesses to show the bad reputation of the deceased and his reputation for being violent, turbulent and bloodthirsty. The trial court sustained the State’s objections to the questions posed to these witnesses, and appellant claims this constitutes reversible error.
In McCaghren v. State, 52 Ala.App. 509, 294 So.2d 756, this Court held:
“After evidence has been adduced in a homicide case tending to show that the defendant acted in self-defense, evidence as to the violent and dangerous character *1040 of the deceased and evidence as to previous threats against the defendant is admissible. But,
‘in the absence of a tendency of the evidence to show that the defendant was without fault in bringing on the fatal encounter, that he was in imminent peril, or that he could not avoid the difficulty or retreat without increasing his peril, the defendant cannot prove the bad character of the deceased for turbulence, nor threats by him toward the defendant, nor of a prior difficulty with him though of a serious nature.’ Farley v. State, 279 Ala. 98, 182 So.2d 364; Sanders v. State, 242 Ala. 532, 7 So.2d 483.”
The testimony of the expert witness in this case shows that the deceased was lying down when he was shot by appellant; that appellant made a murderous assault, indeed, an unprovoked assault upon the deceased, finds full support in the testimony. The evidence shows that appellant left his garage where he was entirely safe from harm and fired the first shot that shattered the window on the side of the car where McCrory was sitting and put 35 to 40 pellets in the neck and body of McCrory that he will carry with him the rest of his life. Appellant’s claim that the deceased was pointing a shotgun at him when he shot him is unbelievable in the light of the fact that when the officers arrived they found the shotgun of the deceased under his body and it had not been fired.
Under the facts and circumstances in this case we are clear to the conclusion that appellant was the aggressor and was not entitled to invoke the doctrine of self-defense.
The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.