First degree murder; sentence: life imprisonment.
Around 11:30 P.M. on October 11, 1974, the appellant requested that Robert James Ford, the victim, repay approximately four dollars which Ford owed him. Ford laughed and refused to do so. The appellant then went and got his grandfather's shotgun and shot at Ford twice. He missed the first time, but the second shot hit Ford in the head, killing him. The appellant then took thirty-five cents from Ford's pocket and ran to a neighbor, Mrs. Bessie Mae Smith, and told her, "Robert was shot."
Officer J.V. Sells, who investigated the murder and arrested the appellant, testified that he read the appellant his Miranda
rights from a printed form. He stated that the appellant understood the rights and signed the form before any questioning began. Sells said that Lorenzo Carter, the appellant's brother, called the police station and asked that he be allowed to come and talk with the appellant. He was brought to the station in a patrol car and was allowed to talk with the appellant alone in the interrogation room. After appellant talked with his brother for about five minutes, he made a complete confession to the police. *Page 684 
 I
Appellant contends that the trial court erred in admitting the confession into evidence prior to the establishment of the corpus delicti. He asserts that nonmedical testimony by Officer Sells as to the cause of death was not competent to establish the corpus delicti. The State contends that the competency of the witness to give an opinion as to the cause of death was within the discretion of the trial judge. The State contends that Officer Sells' qualification to testify as to the cause of death in the instant case was properly established, therefore, the trial court did not abuse its discretion in admitting such testimony into evidence.
A defendant's confession may not be admitted into evidence until proof of the corpus delicti has been established by the State by independent evidence. Arnold v. State, 57 Ala. App. 172, 326 So.2d 700 (1976). Proof of the corpus delicti must show the actual commission of the crime by someone, but such evidence does not necessarily have to connect the defendant with the crime. Arnold, supra. Proof of the corpus delicti may be by circumstantial evidence as well as direct evidence.Johnson v. State, 55 Ala. App. 581, 317 So.2d 548 (1975). In the instant case, before the confession was admitted into evidence, it was established that the victim was shot. One witness stated that she heard the two shots and then saw an unidentified person running from the scene. Another witness, Bessie Mae Smith, testified that shortly after the shots were fired, the appellant ran up to her and told her the victim had been shot. We deem such testimony to be sufficiently strong as to support an inference on the part of the jury that the victim had been shot and that the shooting was brought about by the criminal agency of another. The fact that the witness could not identify the person running from the scene of the shooting is not necessary to the establishment of the corpus delicti. Malone v.State, 37 Ala. App. 432, 71 So.2d 99, cert. denied 260 Ala. 699,71 So.2d 101 (1954). The fact that the victim had been shot is undisputed; however, the question remains as to whether the State presented adequate proof that the victim was dead, and if so, whether death resulted from the shooting in question.
Whether a witness is qualified to testify as an expert is a question addressed to the sound discretion of the trial court, and that court's decision will not be disturbed on appeal in the absence of abuse. Chatom v. State, Ala., 348 So.2d 838
(1977); Luckie v. State, 55 Ala. App. 642, 318 So.2d 337, cert. denied 294 Ala. 764, 318 So.2d 341 (1975). Physicians are not the only persons who are qualified to express an opinion as to cause of death. A detailed list of many such persons and their qualifications is found in Cobb v. State, 50 Ala. App. 707,282 So.2d 327 (1973).
In Welch v. State, 45 Ala. App. 657, 658, 235 So.2d 906, 907
(1970), this court stated:
 "In a death as distinguished from a `killing,' the prosecution must prove an absence of natural causes. That is, the first step is to prove the victim died because he was killed."
In Dismukes v. State, Ala.Cr.App., 346 So.2d 1170, cert. denied, Ala., 346 So.2d 1177 (1977), this court held that cause of death could be shown by nonexpert testimony. In that case, the defendant shot her husband five times with a pistol on a public street. A "volunteer emergency technician" arrived at the scene and examined the victim and found no breathing, blood pressure, or carotid pulse. There, this court stated:
 ". . . The causal relationship between the act of the accused inflicting the wound and the death of the deceased was not obscure or beyond the knowledge of the average layman. A dangerous weapon was used and there was no evidence presented or even suggested that the accused died from anything but the bullet wounds inflicted by the appellant. . . .
 "Expert medical testimony as to the cause of death should be admissible in all homicide cases. It should be regarded as necessary and essential for a conviction in many homicide cases and in those where death is not the natural and probably *Page 685 
consequence of the unlawful act of the accused or the result of an independent intervening cause in which the accused does not participate and which he could not foresee."
In McDonald v. State, 56 Ala. App. 147, 320 So.2d 80 (1975), the cause of death was proved without medical testimony. There, the shooting and death were almost simultaneous. The cause of death was so obvious that there was no necessity for a physician to testify. As stated in Dismukes, supra, on rehearing:
 "There are cases where the killing is almost immediate or simultaneous with the commission of the crime, such as the shooting of a person five times. Where witnesses observe this, find no pulse and no blood pressure, and state that the person appears to be dead, the cause of death is fairly obvious and, therefore, may be proved by circumstantial evidence without expert testimony. However, (1) where the act which the State claims to have caused death is remote in time from the actual death, or (2) where there is a possibility or likelihood that an intervening cause could have brought about death, or (3) where the nature of the injury is not one that is ordinarily likely to cause death, or (4) where there is not an obvious causal connection between the nature of the injury and the death, then the State is under a burden to present expert testimony to show that the injury in fact resulted in and caused the death in question."
In the instant case, Officer Sells testified that he had been employed by the Prichard Police Department some sixteen years. In that capacity, he had observed twenty-five or more bodies where gunshot wounds had resulted in death. The witness was questioned on voir dire examination outside the presence of the jury, and the trial court, after extended argument by counsel, concluded that an adequate predicate had been laid for Officer Sells to testify as to cause of death of the victim. Sells testified that he examined the body and checked for a pulse, heartbeat, and breathing. He stated the victim was not breathing and had a gunshot wound to the head, with small pellet holes around it. On the basis of Lucy v. State,49 Ala. App. 116, 269 So.2d 134 (1972), the trial judge allowed the witness to testify in the presence of the jury that the cause of death was a gunshot wound to the head. In Lucy, supra, the defendant was charged with murdering the victim by repeatedly stabbing him with a knife. This court noted that there was an objection to testimony from a deputy sheriff that the victim's death was caused by the loss of blood from the stab wounds administered by defendant. This court concluded:
 ". . . It appears from a preliminary examination that the witness had, during his career as a police officer, considerable experience in observing stab wounds and the effects thereof and was more knowledgeable than the average witness or juror. . ..
 "The competency of the witness to give his opinion as to the cause of death was addressed to the sound discretion of the court and its ruling will not be disturbed on appeal in the absence of abuse . . . "Aside from this, the jury could conclude from the physical facts in evidence that deceased died from the effects of the wounds." (Citations omitted.)
We therefore conclude in the instant case that the trial court did not err in allowing Officer Sells to testify as to the cause of the victim's death. His testimony, coupled with the prior testimony of Bessie Mae Smith and Margaret Hixon, sufficiently established the corpus delicti thus rendering the appellant's confession admissible if it meets the standards of voluntariness.
 II
Counsel for appellant asserts that the appellant's confession should not have been admitted into evidence because it was induced by a promise of favor or reward.
Appellant's brother testified during a hearing on a motion to suppress the confession that he did not call the police and request that he be brought to the police *Page 686 
station to talk with his brother. He stated that the police came to his home, picked him up in a police car, and carried him to the station where he was allowed to talk to his brother alone. No police officers were present while the brothers talked, and the police did not know what was said during the conversation. The appellant's brother stated:
 "I told him that if he wanted to he could tell the truth and they would make it easier on him if he would go ahead and tell the truth. I promised him that they would make it easier on him."
The witness stated, however, that none of the police officers told him or suggested to him that he should make such a statement to the appellant. On the State's cross-examination of Lorenzo Carter, the following took place:
 "Q. Alright. Did they tell you what to talk to him about?
"A. No, sir.
 "Q. Did they tell you to promise him anything, did they?
"A. No, sir.
 "Q. Did they tell you to tell him to confess to this matter?
"A. No, sir.
 "Q. Did they tell you to tell him to admit to all this?
"A. No, sir.
"Q. You did this on your own?
"A. Yes, sir.
"Q. And you are his older brother?
"A. Yes, sir."
Officer Sells testified that after appellant was allowed to talk to his brother for about five minutes, he made a confession. The waiver of rights form which was read to the appellant and signed by him was introduced into evidence. That form set out each of the required Miranda warnings. Sells likewise testified that neither he nor anyone in his presence threatened the defendant nor made any promises or offers of reward to him in order to obtain a confession. Both the Miranda
predicate and the predicate as to voluntariness of the appellant's statement were properly laid before the confession was admitted into evidence. The only question presented is whether the purported inducement by appellant's brother should have prevented the admission of the confession into evidence.
A person inducing an accused to make a confession need not always be a law enforcement officer in order to render the confession inadmissible. Allen v. State, 53 Ala. App. 66,297 So.2d 391 (1974), cert. denied 292 Ala. 707, 297 So.2d 399. InAllen, the confession was not made to a law enforcement officer, but was nevertheless held to be involuntary because it was made to a person who could have been fairly supposed by the defendant to have the power to secure the promised benefit for the accused. In the instant case, appellant could certainly not suppose that his brother would have the power to secure a promised benefit for him. Thus, Allen and the instant case are easily distinguishable.
The duty to determine whether or not a confession is voluntary rests with the trial judge. Wallace v. State,290 Ala. 201, 275 So.2d 634 (1973). Also see Tanner v. State,57 Ala. App. 254, 327 So.2d 749 (1976), wherein a sharp conflict in the evidence existed as to whether or not an inducement had been made to the appellant to confess by an agent for a private company and by law enforcement officers. We find here, as we did in Tanner, that the evidence was sufficient to support the trial court's ruling that the confession was voluntarily given.
 III
Counsel for appellant contends in his brief that since the appellant was fifteen years of age at the time the crime was committed, his confession should not have been admissible. Counsel argues that the general juvenile statutes of Alabama at that time disallowed the use of a juvenile's confession, except in juvenile court proceedings. He contends that although local statutes applying only to Mobile County permit the introduction of a child's confession into evidence, that the inequity between the local and the general statutes constitutes "basic error." *Page 687 
Local provisions of law concerning juveniles in Mobile County, effective at the time the confession was given, are found in Title 62, § 49, et seq., Code of Alabama 1940, Recompiled 1958. The general state law pertaining to juveniles, applicable at that time, is found in Title 15, § 350, et seq., Code of Alabama 1940, Recompiled 1958. Title 13, § 377, is the section of the general law which appellant contends would render the confession inadmissible. This court has held that Title 13, § 377, did not mandate the exclusion of a confession made by a juvenile defendant while in custody of police officers. Parker v. State, Ala.Cr.App., 351 So.2d 927, cert. quashed, Ala., 351 So.2d 938 (1977). That decision was based upon the wording of that section which prohibited only confessions made to a probation officer or to the juvenile court from being used in other criminal proceedings. In any event, the purported inequity between the general and local statutes was not raised in the trial court and was not ruled upon specifically by the trial court. Matters raised for the first time on appeal are not subject to review. Review on appeal is limited to matters on which rulings are invoked at the trial court. Frazier v. State, 53 Ala. App. 492,301 So.2d 256 (1974).
The record shows that the appellant applied for youthful offender treatment pursuant to Act No. 335, Acts of Alabama 1971, 3d Special Session, approved February 10, 1972 (Title 15, § 266 (1), et seq., Code of Alabama 1940, Recompiled 1958). The trial court ordered the probation officer to make an investigation to determine if the appellant would be eligible for youthful offender treatment. After a hearing thereon on May 16, 1975, the court denied the appellant's request to be treated as a youthful offender. Clemmons v. State, 294 Ala. 746, 321 So.2d 238 (1975). The trial court found that the appellant had likewise been certified by the juvenile court as incorrigible. As the appellant was a juvenile, we have reviewed the record carefully regarding the appellant's confession. The admissibility of a confession does not depend upon age alone, but upon many other circumstances such as the defendant's intelligence, education, experience, and ability to comprehend the meaning and effect of his statements. Parker, supra.
In considering the admissibility of the appellant's confession, we have considered a comprehensive set of circumstances set out in West v. United States, 399 F.2d 467
(C.A.5, 1968). Our application to the instant case of each of the circumstances enumerated in West results in a finding that the appellant's confession was not involuntary due to his age.
 IV
Appellant called Bessie Mae Smith as a defense witness and asked, "During your acquaintanceship with Robert Ford, do you have an opinion as to his general reputation for violence?" The trial court sustained the State's objection to that question, which appellant contends was reversible error.
In Anderson v. State, 30 Ala. App. 124, 2 So.2d 461 (1941), the Court of Appeals held:
 "There was no impropriety in disallowing proof of the general bad character of the deceased. In a murder prosecution, such inquiry should be limited to his character or reputation for violence, turbulence, and bloodthirstiness; and this, of course, only where the issue of self-defense is presented. Sanford v. State, 2 Ala. App. 81, 88, 57 So. 134; McKenney v. State, 17 Ala. App. 117, 82 So. 565; 30 C.J., p. 229, Sec. 465."
In Farley v. State, 279 Ala. 98, 182 So.2d 364 (1966), Justice Merrill stated the proposition well that:
 ". . . in the absence of a tendency of the evidence to show that the defendant was without fault in bringing on the fatal encounter, that he was in imminent peril, or that he could not avoid the difficulty or retreat without increasing his peril, the defendant cannot prove the bad character of the deceased for turbulence, nor threats by him toward the defendant, nor a prior difficulty with him, though of a serious nature. . . ." (Citations omitted.) *Page 688 
The record discloses no evidence of self-defense, per Farley, supra, which would allow the appellant to prove the bad character of the deceased for turbulence or violence.
 V
After the trial court's oral charge, the jury began its deliberations. After some period of time, the jury returned to the courtroom for further instructions, and the foreman asked the trial judge, "We want to know if we set the severity and the penalty, or just the severity." The trial judge further instructed the jury on that point of law, whereupon a juror made the following request, "I would like you to go over again the four things that constitute murder in the first degree, and explain that each word means of the four, willful, deliberate, malicious and premeditated." The trial judge then read Title 14, § 314, of the Alabama Code and explained its meaning as requested.
After the trial judge finished his supplemental instructions to the jury and informed them they could return to the jury room for further deliberations, counsel for the appellant made the following objection:
 "Prior to that time, Your Honor, may I say that I have no objection to an instruction on what the Court charged in response to the Foreman's question, but I do have an objection to the latter question, and to the reiteration to the instruction previously given, and I move for a mistrial at this time."
The same question was presented in Tillison v. State,32 Ala. App. 397, 27 So.2d 41, cert. denied 248 Ala. 196,27 So.2d 46 (1946). The Court of Appeals answered the question presented by stating:
 "After the jury had deliberated for a while it returned to the court room for further instruction. The trial judge restated to the jury a portion of his oral charge. Exceptions were taken by appellant. Complaint is made that the trial judge restated a part of his oral charge and in this manner gave added and undue emphasis to said portion.
 "We fail to see how this action on the part of the lower court could in any way interfere with the legal rights of the defendant. We take it that the jury came to a place in its deliberation where it wanted further light and it sought this light from the only source open to it. The law wisely gives this opportunity to a jury which at all times has access to the trial court for legal instruction. Montgomery v. State, 21 Ala. App. 327, 108 So. 348; Roberts v. State, 26 Ala. App. 331, 159 So. 373."
In addition, we think the appellant's objection came too late. He made no objection at the time the juror asked for the additional instruction. Instead, he waited until the trial court had read the applicable code section, had given a full explanation, and the jury was in the process of returning to the jury room before his objection was made known to the trial court. We likewise find no error by the trial court in denying the motion for a mistrial on this issue. A motion for a mistrial is addressed to the sound discretion of the trial judge, and we find no abuse of discretion in this instance.Shadle v. State, 280 Ala. 379, 194 So.2d 538 (1967).
 VI
The appellant asserts that an unreasonable delay in preparation of the trial record, caused by twelve extensions of time granted to the court reporter, effectively denied him procedural due process in perfecting his appeal. Counsel for appellant, in his brief, states, "I cannot suggest to this Court what remedy can be afforded . . Perhaps the new rules will avoid this situation."
This court has had considerable difficulty in the past in obtaining trial transcripts from some court reporters. See,Pope v. State, Ala.Cr.App., 345 So.2d 1381-1390 (1976-77);Smith v. State, Ala.Cr.App., 346 So.2d 463-465 (1976). We pointed out in the first Pope opinion that, as the appointing authority, the circuit judge has a duty to see that the court reporter functions properly, citing Pharr v. State, 45 Ala. App. 152, *Page 689 227 So.2d 439 (1969). However, we do not find that the trial courts' granting of numerous extensions of time for court reporters to prepare transcripts of the evidence is per se an abuse of the trial courts' discretion. In the instant case, each order of the trial judge extending the time to file the transcript of the evidence states that the extension was given for "good cause shown." The record shows nothing to the contrary.
Prior to the adoption of Rule 11, Alabama Rules of Appellate Procedure, the legislature had given this court no power to control court reporters who were "within the appanage of a circuit judge." Populus v. State, 48 Ala. App. 686,267 So.2d 477 (1972). It was primarily because of delays in the preparation of trial transcripts, such as in the instant case, that prompted the Supreme Court to adopt Rule 11 (c), ARAP, which allows the circuit court to grant only one extension of time for filing the court reporter's transcript. All other extensions of time must now be granted by the appellate courts, for cause shown. The appellant was correct in his observation that perhaps the new rules will avoid such inordinate delays as he experienced in the instant appeal.
For aught that appears in the record, each extension in the instant case was granted for "good cause shown." The presumption that the trial judge acted properly is not overcome by the mere fact that the trial judge granted more extensions of time to the court reporter than the appellant considered necessary for completion of the record.
In Populus, supra, Judge Cates answered the question of whether a delay in preparation of the trial transcript is prejudicial to a convicted defendant:
"In United States v. Cifarelli, 2 Cir., 401 F.2d 512, we find:
 `* * * [t]he constitutional guarantee to a speedy trial upon which appellant relies cannot be easily transposed to an appeal. The purpose of the guarantee is to prevent long unjustified incarceration or anxiety prior to trial and to limit the possibility that the memory of witnesses may dim or evidence may be lost, thus impairing the ability of the accused to defend himself. United States v. Ewell, 383 U.S. 116, 120, 86 S.Ct. 773, 15 L.Ed.2d 627 * * *. On the other hand, delay in appeal is not truly prejudicial except in case of reversal. This is not such a case.'" (Emphasis supplied.)
Having found no reversible error in the record, we find that the delay in the instant appeal was not prejudicial to the appellant.
Affirmed.
All the Judges concur.